UNITED STATES, Appellee,

v.

Manuel GONZALEZ–SOBERAL, AKA Raul, Defendant–Appellant.

No. 95–2013.

United States Court of Appeals,
First Circuit.

Heard Nov. 6, 1996.

Decided March 26, 1997.

Rafael F. Castro Lang, San Juan, PR, for appellant.

José A. Quiles–Espinosa, Senior Litigation Counsel, with whom Guillermo Gil, United States Attorney, and Nelson Pérez–Sosa, Assistant United States Attorney, were on brief for appellee.

Before TORRUELLA, Chief Judge, CAMPBELL, Senior Circuit Judge, and DiCLERICO,* District Judge.

* Of the District of New Hampshire, sitting by

TORRUELLA, Chief Judge.

Defendant-appellant Manuel González–Soberal ("González–Soberal") was convicted on four counts: (1) conspiracy to possess with intent to distribute multi-kilogram amounts of cocaine; (2) distribution of eight kilograms of cocaine on October 13, 1991; (3) distribution of nineteen kilograms of cocaine on October 20, 1991; and (4) distribution of twenty-nine kilograms of cocaine on October 27, 1991. He now appeals, claiming errors in the jury selection process, the jury instructions, and in the actions of the trial judge, including sentencing. Finding no reversible error, we affirm. We deal with each claim in turn, discussing factual details as they become relevant.

## I. Jury Selection

Appellant makes three claims with respect to the jury selection. First, he argues that the district court committed reversible error when it removed juror number 9. Second, he submits that the failure to remove juror number 45 for failure to adequately speak and understand English was also reversible error. Finally, he contends that the district court's failure to remove juror number 1 for cause was reversible error.

### A. Juror Number 9

Federal Rule of Criminal Procedure 23(b) permits a trial judge to excuse a juror for just cause if the judge finds it necessary to do so. Fed.R.Crim.Proc. 23(b). "The trial judge has substantial discretion in exercising this responsibility and may remove the juror when 'convinced that the juror's abilities to perform his duties [have] become impaired.'" United States v. Walsh, 75 F.3d 1, 5 (1st Cir.1996) (quoting United States v. Huntress, 956 F.2d 1309, 1312 (5th Cir.1992)).

The circumstances under which juror number 9 was removed are as follows. While the judge was delivering the charge, there was a disruption in the jury box. The judge summarized the incident as follows:

I remember juror number 9 from her impaneling questions, she's a very intelligent woman, she's an economist. Her hus-

designation.

band works at the Department of Treasury. She's—she's—she's a person with a lot of education, formal education. But I do think that what I saw here in court today was not a normal reaction. That is not a normal reaction.

It's entirely possible that she's having some sort of problem that she's not even aware of. But what she did, she interrupted the jury charge, and as if we were not here, as if she was alone with—with a juror that is sitting next to her, she started a conversation with him in a loud tone of voice. She started to touch this juror, tried to take his name tag off of his clothing, asked him questions about the problems, something around his neck or I don't know what.

I stopped, listened, watched, did not make an issue. And when I asked her up here, when I asked her up here she did not remember what had happened, actually. She could not remember the reasons why she interrupted the jury charge or started to touch her neighbor. And I—I honestly think that she has a problem. I don't know what the problem is. She has some sort of problem with her. Not only that, but some of the jurors have—some of the jurors have expressed their concern about her ability to be sitting in this jury.

Tr. II at 449–50.

Based on his observation of the incident and his subsequent investigation, the judge decided to excuse juror number 9 and to substitute one of the alternate jurors. He offered defense counsel the opportunity to choose between the two alternate jurors, and counsel chose alternate number 1.

The judge then asked juror number 9 to approach the bench and explained to her his intention to excuse her. She stated that she had found the case very difficult and that she felt compassion for those involved. Upon questioning, she responded that she had not slept well the night before because she had been thinking about the case. She also told the court that she took medication to control her epilepsy. The following colloquy ensued:

The Court: Have you had problems, seizures and things like that in the past?

Juror: The people says.

The Court: People say that?

Juror: But I say that I have—I don't have anything.

The Court: I see.

Juror: Because my reactions are normal.

Tr. II at 455–56. And a few moments later:

The Court: Do you remember what prompted you to talk to your neighbor?

Juror: What you say?

The Court: When I was instructing the jury—

Juror: Uh-huh.

The Court:—You decided to talk to your next door neighbor. Do you remember that?

Juror: No.

The Court: You don't remember that?

Juror: No.

The Court: I see. And you tried to take his name tag away, this one. Do you remember that?

Juror: No.

Tr. II at 456–57.

Finally, in explaining his decision to the jury, the judge made the following remarks:

I noticed that when I was instructing you, all of a sudden she like blanked out, that I was watching. She was not here anymore and she turned to the right to her neighbor, started to talk to him. I could not understand what she was saying. It didn't seem to have much logic to what she was saying, the words, and then she grabbed his name tag and said something about, "what's on your neck," or something along those words. She doesn't remember that.

She is—she's taking some medication. I think she has some sort of problem, physical problem. She takes medication, anticonvulsive medication. I honestly hope that she's okay. But I do think that under the circumstances, I think it would be unfair—I don't think it would be right for me

to leave her in the—in the jury panel, because that's not right.

Tr. II at 459–60.

█ In light of all of the above, we do not find reversible error in the decision to excuse the juror. There was significant evidence that juror number 9 was no longer able to perform her duties. Considering the deference that we must accord the trial judge in matters such as this one, we affirm the decision to remove the juror. We add that there is no evidence that the judge's decision was influenced by the juror's view of the case. Although the juror stated that she found the case to be difficult and that she had "compassion for these people," Tr. II at 453, these statements were made after the judge had decided to remove her from the jury. Furthermore, they do not, as appellant contends, demonstrate that "she had reasonable doubts as to whether or not appellant should be found guilty." Appellant's Brief at 15. A juror might find a case difficult for many reasons, and to conclude that she favored acquittal is speculative.

Our decision is consistent with this court's decision in *United States v. Molinares Charris*, 822 F.2d 1213, 1222–23 (1st Cir.1987) in which we upheld the decision to excuse a juror whose health appeared to be at risk. The juror was obviously distressed by the proceedings and had taken a tranquilizer in order to calm her nerves.

Similarly, in the instant case, the judge was concerned with the juror's health. After an investigation into the situation, the judge felt that the stress of the trial posed a risk to the juror's health and that her ability to perform her duties had been compromised.

As we stated in *Molinares Charris*, "[w]e should not be quick to second guess a trial judge, who was in a better position than we are to assess the severity of the situation. After making careful inquiries, and recognizing her responsibility for the well-being of those called upon to serve the court, the judge decided that the risk to the juror's health was too great." *Id.* at 1223.

**B. Juror Number 45**

Appellant next claims that the district court committed reversible error by failing to remove juror number 45. During the investigation of juror number 9, the judge interviewed juror number 45. The exchange went as follows:

The Court: Your name and number, please.

Juror: My name is Byron Chique. My number on the list is 45.

The Court: You have noticed anything wrong with the lady that started to talking in a loud tone of voice?

Juror: Yes. Yes.

The Court: What have you noticed?

Juror: Talking in English, it's very difficult to explain to you, but this morning not too much important but she—she say—I can't explain in English. It's very difficult.

The Court: Which word are you looking for?

Juror: Let me say—

The Court: Which word are you missing that you cannot—I'll give you the word.

Juror: I can say it in Spanish.

The Court: What is the word?

Juror: (In Spanish)

The Court: Jaime, there is a word that he is having a problem with he can't explain.

Juror: (Conferring with the interpreter.)

Interpreter: I told the lady—I was talking to the lady this morning and I told her and she was—she was like expectant, she was hesitant in her—her actions.

Juror: Yes.

The Court: It struck you as something abnormal?

Juror: Not normal, not exactly normal.

The Court: Not normal?

Juror: No.

The Court: Okay. What was your reaction then when you saw her speak the way she did in open court in the middle of the charge and start to fix the—her neighbor's name tag? You saw that?

Juror: Would you repeat, please?

The Court: You saw—you saw her when she grabbed her neighbor's name tag and tried to—

Juror: Yeah.

The Court:—fix it?

Juror: I see—I see that is not in his body. his body—she—likes to sleep. (Confers with interpreter)

Interpreter: She seemed to be like asleep, like she was sleepwalking.

The Court: Oh, I see. Okay. Thank you.

Tr. II at 443–46.

Appellant's counsel then stated that he had concerns about juror number 45's knowledge and understanding of the English language. The district court disagreed. Shortly thereafter, counsel again raised the question of juror number 45's proficiency in English. The judge responded:

Number one, Mr. Chique was examined in English by me. There is a piece of paper that I gave these people for them to talk to me in English when I'm selecting them, and he was able to express himself clearly in English. I have no doubt in my mind.

I can tell you something, . . . whenever I have the slightest doubt about somebody's English, not only do I excuse that person from the panel, I eliminate the person from the list, from the jury pool completely. I don't take any chances with that.

He was looking for a word, "sleepwalking," and that is not a concept that you deal with every day. And he was pretty nervous. He was, you know, nervous up here trying to explain to me something, and that's why he could not find the word.

He's perfectly capable of understanding the evidence in this case. I don't have a problem with that at all. And if I had, believe me, he wouldn't even be on the jury to begin with, because I don't take chances with that.

Tr. II at 449.

A trial judge has substantial discretion to determine when jurors should be removed for cause. We are hesitant to reverse the reasoned conclusion of the trial judge on the question of a juror's ability to understand English because the trial judge is in a much better position to assess the language competency of a particular juror. *See Molinares Charris*, 822 F.2d at 1222–23; *Walsh*, 75 F.3d at 5.

In the instant case, the juror in question had met the statutory linguistic competency standard under the Jury Selection and Service Act, 28 U.S.C. § 1865, and had undergone voir dire—during which defense counsel had the opportunity to question the juror.

Although those portions of the transcript quoted suggest that the juror's command of the English language was less than that of a native speaker, they do not warrant the conclusion that the juror was unable to follow the proceedings or understand the evidence and therefore do not merit reversal. In light of our deferential standard of review and the limited information available from the transcript, we cannot overturn the judge's decision to retain juror number 45. We find no abuse of discretion.

## C. Juror No. 1

During voir dire, juror number 1 stated that his father had been killed by a drug dealer during a holdup. Defense counsel sought to have the juror excused for cause. The district court, having interviewed the juror, determined that he should not be excused for cause. Defendant eventually used one of his peremptory challenges to strike the juror. Appellant now argues that the juror should have been removed for cause, that the failure to remove the juror forced the defendant to use a peremptory challenge, and that this constitutes grounds for a new trial.

It is well established that the trial court has considerable discretion in ruling on challenges for cause. *See Dennis v. United States*, 339 U.S. 162, 168, 70 S.Ct. 519, 521–22, 94 L.Ed. 734 (1950). "Substantial deference is due the trial court's exercise of its discretion in handling situations involving potential juror bias or misconduct." *United States v. Angiulo*, 897 F.2d 1169, 1185 (1st Cir.1990). "There are few aspects of a jury trial where we would be less inclined to disturb a trial judge's exercise of discretion,

absent clear abuse, than in ruling on challenges for cause in the empaneling of a jury." *United States v. McCarthy,* 961 F.2d 972, 976 (1st Cir.1992) (internal quotations omitted). "We review a trial judge's exercise of discretion in empaneling a jury for 'clear abuse.'" *United States v. Bartelho,* 71 F.3d 436, 443 (1st Cir.1995).

■ In the instant case, after the juror stated that his father had been killed by a drug dealer, the judge asked: "Do you believe that even though this happened within your family you could still be a judge of the facts in a drug case and be fair and impartial?" Tr. I at 11A. The juror responded "yes, I can." Tr. I at 11A. Following an exchange with counsel, the judge decided to leave the juror on the panel, citing as reasons the fact that the juror, when asked if he could be impartial, had been extremely assertive in his answer, and that he was intelligent.

Nothing in either the record or the parties' briefs on appeal suggests that the trial court's decision to retain juror number 1 was grossly in error. The judge appears to have concluded, after considering the suitably of the juror, that he could remain on the panel. Neither a lack of judgment on the part of the judge nor prejudice toward the defendant has been demonstrated. We find no "clear abuse."

Because we find no clear abuse in the judge's refusal to remove the juror, we need not address the question of whether forcing the appellant to use a peremptory challenge is grounds for a new trial.

## II. Jury Instructions

### A. Appellant's Requested Jury Instruction

Appellant next claims that the district court committed reversible error when it failed to give appellant's requested instruction concerning the impeachment of witnesses by prior conviction.

■ In considering challenges to jury instructions, the refusal to give a requested instruction is reversible error only if "the instruction (1) is substantively correct; (2) was not substantially covered in the charge

actually delivered to the jury; and (3) concerns an important point in the trial so that the failure to give it seriously impaired the defendant's ability to effectively present a given defense." *United States v. Gibson,* 726 F.2d 869 (1st Cir.1984) (internal quotations omitted). The charge "need not follow the exact form and wording of the defendant's proposed instructions." *Id.*

In the instant case, González–Soberal sought the following instruction:

> You have been told that the witness _____ was convicted in 19__ of [e.g.: armed robbery]. A conviction is a factor you may consider in deciding whether to believe that witness, but it does not necessarily destroy the witness's credibility. It has been brought to your attention only because you may wish to consider it when you decide whether you believe the witness's testimony.

Appellant's Proposed Jury Instruction # 1.12.

The jury instructions delivered by the court, although they did not contain this precise instruction, did include the following language:

> You have heard testimony from an unindicted co-conspirator, Mr. William Negrón Zapata, and from a defendant in this same case who, as you know, was tried earlier, Willy Maya Acosta, who have—who both have cooperation agreements with the government. The testimony by Mr. Negrón Zapata was given in exchange for a promise by the government that he will not be prosecuted for some crimes he admittedly committed, including the ones in this case. The testimony by Willy Maya Acosta was given in order to hopefully receive a reduction of sentence on account of cooperation.

> In evaluating this testimony, you should consider whether that testimony has been influenced by the government's promise, and you should consider that testimony with greater caution than that of ordinary witnesses. Such agreements are legal. The law only requires that you consider testimony given under those circumstances

with greater caution than that of ordinary witnesses.

Tr. II at 406–07.

Although the instructions given by the judge did not contain the specific instruction sought by González–Soberal, "there is not reversible error if the jury charge taken as a whole substantially covered the issues contained in the requested instruction." *Angiulo,* 897 F.2d at 1207.

■ Having reviewed the instructions given to the jury, we conclude that they substantially covered issues of credibility with respect to the witnesses in question. The judge reminded the jury that the two witnesses had been convicted and that they had cooperation agreements with the government. He gave instructions concerning the credibility of witnesses, telling the jury that they should view the testimony of these witnesses with greater caution than the testimony of an ordinary witness. There is no reason to believe that the jurors were misled by these instructions, or that they believed it impermissible to view with additional skepticism the testimony of witnesses who had prior convictions. Accordingly, we find no error in these jury instructions.

## B. Reasonable Doubt

González–Soberal also claims that the trial court's jury instructions regarding reasonable doubt impermissibly reduced the government's burden of proof.

In his initial instructions to the jury, the judge made the following remarks:

Second. The burden of proof is on the government until the very end of the case. The defendant has no burden to prove his innocence or to present any evidence or to testify. Since the defendant has the right to remain silent, the law prohibits you in arriving at your verdict from considering whether the defendant may or may not have testified.

Third. The government must prove a case against the defendant beyond a reasonable doubt. I will give you further instructions at the end of the case, but in this sense be mindful, those of you who participated in civil cases, that the standard is different. In the civil case we say a plaintiff prevails if he proves a case by a preponderance of the evidence. In the criminal case the situation we say the government prevails if it proves a case beyond a reasonable doubt.

If I were to graphically illustrate for purposes of an initial charge or instruction so you have an idea what I'm talking about, I would say this. In the civil case if we bring a balance, scale of the type used in old drugstores before, not any more, you will put evidence—in the civil case plaintiff's evidence on one of the plates and defendant's evidence on the other, you will see how well the reaction is. If the scale just starts moving a little bit to the plaintiff's side, the plaintiff has prevailed. That is preponderance of the evidence.

When we say "beyond a reasonable doubt," proving a defendant guilty beyond a reasonable doubt, by the very words we're implying that the government has a heavier burden than the one that I just described. Because liberties are involved, it's a different kind of case, therefore the government's burden is heavier than that and I will explain that at the end of the case.

Tr. I at 11–13.

At the end of the case, the judge returned to the reasonable doubt issue:

The presumption of innocence alone is sufficient to find him not guilty and can only be overcome if the government proves beyond a reasonable doubt each and every essential element of the crimes charged.

And what is reasonable doubt? A reasonable doubt is a doubt based upon reason and common sense and may arise from a careful and impartial consideration of all the evidence or from lack of evidence. Proof beyond a reasonable doubt is proof that leaves you firmly convinced that the defendant is guilty.

If, after a careful and impartial consideration with your fellow jurors of all the evidence, you are not convinced beyond a reasonable doubt that the defendant is

guilty, it is your duty to find the defendant not guilty.

Tr. II at 418–19.

■ This court has cautioned against the risks that can accompany attempts to define reasonable doubt. *See United States v. Andujar*, 49 F.3d 16, 23 (1st Cir.1995); *United States v. Campbell*, 874 F.2d 838, 843 (1st Cir.1989). Nevertheless, attempts to define reasonable doubt do not necessarily result in reversible error. *Andujar*, 49 F.3d at 23. We have said that, in our experience, even imperfect formulations, usually meet the constitutional requirements when viewed in the context of the entire charge to the jury.

■ When we review a trial court's definition of reasonable doubt, our concern is whether the instructions have a tendency to reduce the government's burden of proof at trial. *Id.* We will find instructions erroneous when, taken as a whole, they have a reasonable likelihood of leading the jury to believe that it can convict on some lesser standard of proof than that required under the reasonable doubt standard. *See United States v. Romero*, 32 F.3d 641, 651 (1st Cir. 1994).

■ Having reviewed the instructions in this case, we believe that there is no reasonable likelihood of misleading the jury. The judge explained that the burden of proof is entirely on the government, and that the government must prove its case beyond a reasonable doubt. The judge contrasted the reasonable doubt standard with the preponderance of the evidence standard in order to avoid any confusion in the minds of jurors who may have served on civil juries in the past. At the end of the trial, in his final instructions, the judge repeated that the defendant must be presumed innocent and that the government must prove guilt beyond a reasonable doubt. Nothing in the judge's attempt to define reasonable doubt was likely to mislead the jury or suggest that the government's burden of proof is less than the reasonable doubt standard.

### III. Fair Trial

Appellant next claims that the district court "repeatedly questioned witnesses on his own in a manner that made him a partisan of the government's case thereby depriving appellant of his constitutional right to a fair trial." Appellant's Brief at 33. Appellant alleges that the judge's questions served to bolster the credibility of government witnesses and undermine that of defense witnesses. Appellant also argues that the judge improperly raised objections to appellant's attorney's questioning and that he elicited improper hearsay from a witness.

■ It is well settled that the trial judge has "a perfect right—albeit a right that should be exercised with care—to participate actively in the trial proper." *Logue v. Dore*, 103 F.3d 1040 (1st Cir.1997). A trial judge retains the common law power to question witnesses and to comment on the evidence. *Id.; see also* Fed.R.Evid. 614(b) ("The court may interrogate witnesses, whether called by itself or by a party."). There are, however, limits to the behavior that is permitted judges. "[F]or example, the judge's participation must be balanced; he cannot become an advocate or otherwise use his judicial powers to advantage or disadvantage a party unfairly." *Id.* "An inquiry into the judge's conduct of the trial necessarily turns on the question of whether the complaining party can show serious prejudice." *Id.*

In his brief, appellant cites several instances of alleged bias on behalf of the judge. After careful review, we conclude that these instances were no more than attempts by the judge to clarify questions, speed the proceedings, or ensure that all information is before the jury. We see no need to recite at length from appellant's brief, choosing instead to comment briefly on his allegations.

■ Appellant asserts that the judge bolstered the credibility of government witnesses on two occasions. We have reviewed the relevant testimony and consider the judge's questioning to be no more than an effort to make clear that the witnesses were testifying under cooperation agreements and to impress on the witnesses the fact that they were required to tell the truth.

■ Another instance cited by appellant was a decision by the judge to overrule an

objection by appellant's counsel. The government was introducing a photograph that included certain markings. Defense counsel objected on the grounds that the markings contaminated the photo. At a bench conference, appellant's counsel stated that he understood that the markings were made during the trial of co-conspirators and that the witness could easily make the same markings on an unmarked photo if one were available. The judge overruled the objection, stating to the jury that he knew what the marks were and that the marks were explained to counsel. Appellant claims, without elaboration, that these comments amount to bolstering the government's evidence. We disagree.

█ As for the claims that the judge sought to undermine defense witnesses and defense counsel, we find them to be meritless. In both instances identified by appellant, the judge was merely attempting to move the trial along without unnecessary delay and the judge's comments cannot be taken to demonstrate bias. *See Logue,* 103 F.3d at 1045; *Deary v. Gloucester,* 9 F.3d 191, 194–95 (1st Cir.1993).

█ Finally, appellant argues that the judge elicited hearsay evidence during testimony. Following an objection on hearsay grounds, the judge asked the witness, Negrón–Zapata, "Who told you that Chanci had said or that Chanci would—If we would find kilos he would—he would keep them?" When Negrón–Zapata replied that Mr. Arroyo had told him this, the judge sustained the objection. Even if it were determined that this was improperly admitted hearsay, it would be harmless error. Nothing in the judge's remarks or the witness's brief response was in any way prejudicial to the defendant. The comments simply do not relate to the defendant, implying that, if error, they were harmless error.

## IV. Sentencing

█ González–Soberal argues that the trial court committed error when it refused to grant a two-point "minor participant" reduction in his offense level on the basis of his role as a courier.[1] "We will reverse the district court's finding that a defendant is not a minimal or minor participant only if it is clearly erroneous." *United States v. Paz Uribe,* 891 F.2d 396, 399 (1st Cir.1989); *see also United States v. Garcia,* 954 F.2d 12, 18 (1st Cir.1992) ("[W]e review a sentencing court's role-in-the-offense determination only for clear error."). The defendant bears the burden of proving that he is entitled to a downward adjustment for his role in the offense. *See United States v. Ortiz,* 966 F.2d 707, 717 (1992).

█ Appellant's claim fails on two independent grounds. First, he argues that "[t]he trial evidence indicates that appellant was a mere courier of money and narcotics," Appellant's Brief at 42, yet he points to no testimony or evidence to support the assertion that his role was limited to one of courier. He refers to only one statement made by the trial judge, who commented that "the evidence has shown so far that the defendant was a money courier." Tr. II at 481. This is insufficient to meet the defendant's burden in this case, and is unconvincing. During sentencing, the judge's comments, taken in their entirety, do not suggest that the judge viewed the defendant as a mere courier. For example, the judge stated "I do not think that he was other than a regular drug dealer that was arranging drug transactions like everybody else was." Tr. II at 481. In addition, the court made it clear that it had considered the defendant's role in the offense, stating that "the court has considered his role ... in the context of the relative culpability of the different defendants that participated in this particular conspiracy. And I will not make an adjustment on account of role." Tr. II at 488.

Second, even if it was shown that González–Soberal had been no more than a courier, he would not automatically be entitled to a reduction. *See United States v. Lopez–Gil,* 965 F.2d 1124, 1131 (1st Cir.1992); *Paz Ur-*

---

1. Section 3B1.2 of the Sentencing Guidelines states:

Based on the defendant's role in the offense, decrease the offense level as follows:

...

(b) If the defendant was a minor participant in any criminal activity, decrease by two levels. United States Sentencing Guidelines § 3B1.2.

*ibe,* 891 F.2d at 399. "A defendant has the burden of proving entitlement to such a downward adjustment, and can only prevail on appeal by demonstrating that the district court's determination as to his role in the offense was clearly erroneous." *Lopez–Gil,* 965 F.2d at 1131 (citations omitted). Appellant fails to present any reasons why, on the facts of this case, he should be granted such a reduction. Therefore, even assuming, arguendo, that appellant was able to establish that he was merely a courier, he has failed to carry his burden of showing that he is entitled to a downward adjustment.

In light of the above analysis, and the deferential posture we take toward role-in-the-offense determinations, we find no clear error in the district court's sentencing.

## V. Conclusion

For the foregoing reasons, the decision of the district court is *affirmed.*