UNITED STATES, Appellee,

v.

Paul E. LOWE, Defendant, Appellant.

No. 97–1452.

United States Court of Appeals,
First Circuit.

Heard Jan. 9, 1998.
Decided May 27, 1998.

E. Peter Parker, Federal Defender Office, for appellant.

Paula J. DeGiacomo, Assistant United States Attorney, with whom Donald K. Stern, United States Attorney, and Despena F. Billings, Assistant United States Attorney, were on brief, for appellee.

Before TORRUELLA, Chief Judge, ALDRICH, Senior Circuit Judge, and BOUDIN, Circuit Judge.

TORRUELLA, Chief Judge.

Defendant Paul E. Lowe appeals his three-count conviction for carjacking in violation of 18 U.S.C. § 2119, kidnapping in violation of 18 U.S.C. § 1201, and interstate transportation for illegal sexual activity in violation of the Mann Act, 18 U.S.C. § 2421. He was sentenced to a total term of 432 months of imprisonment. Lowe argues that he was deprived of his full complement of peremptory challenges during voir dire, alleges that the jury was exposed to prejudicial facts not in evidence, and challenges the sufficiency and admissibility of certain evidence. He also contends that the district court erred in sentencing him for the carjacking count. We affirm.

## I. BACKGROUND

On an appeal from a jury conviction, we view the facts, consistent with record

support, in the light most favorable to the jury's verdict. *United States v. Rosen*, 130 F.3d 5, 6 (1st Cir.1997). We find that a jury could have found the following facts.

At approximately 5:00 a.m. on Sunday, December 10, 1995, Lowe helped a young woman ("K.") by pushing her car as she drove it out of a snowbank at the end of her driveway in Lowell, Massachusetts. Upon freeing K.'s car, he forced her to let him in, and drove her to New Hampshire, where, in the front passenger seat, he forced her to perform oral sex on him while holding a screwdriver to her neck, and then raped her vaginally. He then drove K. back to Massachusetts, and after stealing her jewelry and money, left K. in her car in Lowell near the Belvedere police precinct.

She immediately drove to the house of her boyfriend, Steve Makris, and told him about the kidnapping, but did not recount the rape. Makris called the police, and when the responding officer arrived, K. again failed to mention the rape. However, en route to the police station, K. stated to Makris that she had been raped. Upon arriving at the police station, she was immediately taken to Saints Memorial Hospital, where emergency room nurse Kathleen Sweetser spoke to K. for approximately 25 minutes. She was eventually examined by an emergency room physician, and released. After giving her statement to the police, she retraced Lowe's route to New Hampshire and back for police detectives. On December 13, 1995, FBI agents and police officers arrested Lowe at his girlfriend's apartment in Waltham, Massachusetts.

The evidence presented at trial also showed that in the hours prior to kidnapping K., Lowe had been involved in an incident in which he purposely and repeatedly rammed his pickup truck into the car in which his friends Nancy Goudreau and Rachel Briggar and their boyfriends were driving. When they confronted Lowe, he threatened to continue hitting the car until Goudreau got into the truck with him. Eventually, Goudreau and her friends parked at the Lowell police station, and there, Lowe rammed the truck right into the car. Lowe fled and drove to Goudreau's apartment in Lowell where he

found her sister, Priscilla Champagne. The police arrived at Goudreau's apartment, searched for Lowe, who was hiding in a closet, but failed to find him. However, they towed Lowe's truck. Lowe left the apartment on foot with two screwdrivers Champagne had provided. A short time later, Lowe encountered K. with her car stuck in a snowbank.

During trial, the government presented DNA evidence, which Lowe's counsel moved to exclude. After evidentiary hearings, the district court issued a detailed memorandum and order denying the motion and admitting the DNA evidence. A jury convicted Lowe of carjacking, kidnapping, and interstate transportation for illegal sexual activity. He was acquitted on an additional count for using and carrying a firearm during a crime of violence. The district court sentenced Lowe to 300 months imprisonment for carjacking, 432 months for kidnapping, and 60 months for the interstate transportation charge, all terms to be served concurrently with each other. Lowe appeals.

## II. DISCUSSION

### A. Peremptory Challenges

Lowe argues that the district court's refusal to strike for cause two prospective jurors, one of whom had been sexually molested and the other who had been the victim of an attempted rape, unfairly forced him to expend two peremptory challenges. Citing *United States v. Cambara*, 902 F.2d 144, 147 (1st Cir.1990), Lowe claims that the district court committed reversible error by denying him the full number of peremptory challenges required by law. Before addressing Lowe's grounds for reversal, we must first determine whether the district court erred in failing to excuse these two jurors for cause. We review a district court's ruling on for-cause challenges to prospective jurors for clear abuse of discretion. *See United States v. Gonzalez-Soberal*, 109 F.3d 64, 69–70 (1st Cir.1997).

The two jurors at issue, juror number 18 and juror number 19, were among a group of ten prospective jurors who responded during voir dire to questions concerning sexual

abuse committed on themselves, a family member or a friend. The district court excluded five of these jurors for cause because they stated they could not be impartial. The district court also excused three additional jurors for cause even though they either claimed that they could be impartial or professed uncertainty regarding their impartiality. The record reflects that the judge did not believe these three jurors after assessing their demeanor.

In contrast, juror number 19 stated that although she had been sexually molested in the past, she did not think it would interfere with her ability to be fair and impartial. The juror stated that the incident had occurred a long time ago, and she had not filed a complaint or gone through a trial. When asked, "Will it in any way bias you against the defendant in this case?" she responded, "no." Lowe's counsel challenged juror number 19 for cause, but the district court refused to strike the juror because "[u]nlike the . . . two other women who were just in front of me who appeared so visibly upset, she didn't. She seemed to be able to put it aside, she said she'd be fair and impartial."

Juror number 18 stated that she had a friend who had been beaten and raped about 35 years ago and that the juror had been the victim of an attempted rape about 40 years ago. The juror said she did not report her own case or go through a trial. The judge asked whether her experiences would in any way interfere with her ability to serve on the jury, she replied "I don't think so." The juror also responded "no" to a question whether she would hold any bias against the defendant. When Lowe's counsel moved to excuse this juror, the judge responded, "I'm not going to excuse her based on my evaluation of her demeanor that she could be fair and impartial. And I view her as credible. It was a long time ago, 35, 40 years ago." Since the district court denied his motions to strike jurors number 18 and 19 for cause, defense counsel used two peremptory challenges to exclude these jurors.

■ We find that the district court did not abuse its discretion in denying Lowe's motions. "There are few aspects of a jury trial where we would be less inclined to disturb a trial judge's exercise of discretion, absent clear abuse, than in ruling on challenges for cause in the empaneling of a jury." *Gonzalez–Soberal*, 109 F.3d at 69–70 (quoting *United States v. McCarthy*, 961 F.2d 972, 976 (1st Cir.1992)). In the instant case, the judge asked each juror several questions regarding their experiences with sexual abuse to ascertain any potential bias. We decline to second-guess the district court's determination that jurors number 18 and 19 could be impartial at trial because "[i]t is the fundamental task of the district court judge to make this sort of distinction." *Cambara*, 902 F.2d at 148. The trial judge is in the best position to assess a potential juror's credibility by observing her demeanor, reaction to questioning, and overall behavior on the stand. Moreover, nothing in the record suggests that the district court judge lacked judgment or was prejudiced toward Lowe. *Cf. Gonzalez–Soberal*, 109 F.3d at 70.

Because the district court did not abuse its discretion in denying the defendant's motions to exclude jurors number 18 and 19 for cause, we need not reach the question whether Lowe's use of two of his peremptory challenges for these jurors mandates reversal.

## B. Jury Exposure to Prejudicial Facts

■ Lowe contends that he was denied a fair trial because the jury was presented with prejudicial facts not in evidence during voir dire and the government's closing argument. He argues that, during voir dire, the jury was made aware of his pretrial escape from the Wyatt Detention Facility when the district court asked the entire panel of potential jurors, "[H]as anyone read or heard anything about an escape involved in this case from a Rhode Island jail?"

■ It was well within the district court's discretion to probe prospective jurors about the escape or any other pretrial publicity to uncover any bias. Lowe himself moved for individual voir dire on the issue of pretrial publicity. "When pretrial publicity threatens to impede selection of an unbiased jury, the trial judge must take extra care to ensure that the particular jurors selected do not come to the trial with preconceived notions

about the defendant's guilt." *See United States v. Samalot Perez,* 767 F.2d 1, 5 (1st Cir.1985). The district court, in fact, excused two prospective jurors for cause because they said they could not be fair and impartial due to publicity concerning the escape. Another juror was excused because of publicity about the case generally.

On the record, we see no specific proof that pretrial publicity either tainted the trial process or prejudiced jurors. Only one of the *deliberating* jurors, juror number 28, had heard about the case, and had done so over a year prior to the voir dire. The district court asked this juror, among other questions, whether he could put aside what he had heard on the news and decide the case on the evidence. The juror responded, "Yes, I think so." The juror also said that he was sure he could be fair and impartial. Indeed, Lowe's counsel did not move to excuse juror number 28 for cause.

■ Lowe also contends that the government's statement in closing argument that "K talked to Sweetser and she told her everything" denied him the right to a fair trial. The defendant's counsel objected to this statement during side bar conference since K did not testify that she had told the nurse everything. He then requested an instruction that the jurors' deliberations should be controlled by their own memories of what happened. While the district court did not issue an immediate curative instruction, which is a practice we regularly encourage to dispel potential prejudice, *see United States v. Rivera–Gomez,* 67 F.3d 993, 999 (1st Cir. 1995), the judge stated during her charge to the jury:

There are certain things I want to emphasize that are not evidence in this case. The first is, the opening statements and the closing arguments made by the lawyers are not evidence in this case.... In the final analysis, it's your own recollection and your own interpretation of the evidence that controls in this case....

Don't speculate about what was redacted. You will see the word "redacted" when it was redacted, and you won't see

the word when the portions of the form are simply blank.

Transcript at 9:104–105.

■ In oral argument as well as in its brief, the government admitted to inaccurately restating trial testimony when it made the challenged comment. In assessing whether improper statements during closing argument require a new trial, we examine (1) whether the prosecutor's conduct was isolated and/or deliberate; (2) whether the trial court gave a strong and explicit cautionary instruction; and (3) whether it is likely that any prejudice surviving the judge's instruction could have affected the outcome of the case. *See United States v. Hodge–Balwing,* 952 F.2d 607, 610 (1st Cir.1991); *United States v. Boldt,* 929 F.2d 35 (1st Cir.1991). We see no deliberate attempt on the government's part to mislead the jury with its stray comment. During side bar, the prosecutor acknowledged that her memory of K.'s testimony may have been incorrect. In addition, as previously mentioned, the government was forthright in oral argument and in its brief in recognizing its error. It appears that the government made an honest mistake rather than a deliberate one.

We also find that the district court's curative instruction adequately addressed Lowe's concerns regarding the government's misstatement. The district court emphasized to the jurors that any statement during the closing was not evidence and that their interpretation of the evidence presented during trial should control their decision. While Lowe claims that the mistaken reference could have related to redacted parts of the hospital records, the district court specifically admonished the jury not to consider any redacted portions of the record. The court properly accounted for any possible prejudice from the government's remark. Under these circumstances, we find no reversible error.

**C. Evidentiary Rulings**

■ Lowe opposes the admission of DNA evidence as well as evidence of his involvement in a car crash prior to the alleged rape. In addition, he contests the sufficiency of evidence used to convict him of kidnapping. We review a district court's de-

cision to admit evidence for abuse of discretion. *See United States v. Alzanki,* 54 F.3d 994, 1008 (1st Cir.1995). We engage in *de novo* review of claims of insufficient evidence. *See United States v. Ruiz,* 105 F.3d 1492, 1494 (1st Cir.1997).

 With respect to the admissibility of the DNA evidence, we ·affirm on the grounds stated in the district court's well-written memorandum and order on this issue. *See United States v. Lowe,* 954 F.Supp. 401 (D.Mass.1996). We write only to note the following. Since Lowe admitted to having sex with K., he contends that the prejudicial impact of the DNA evidence far outweighs its probative value ˙on the issue of identity. However, as the district court observed, the evidence "was probative not only on the issue of identity but also on the location of the alleged rape." *Id.* at 408, n. 8. Thus, the district court found that, under Fed.R.Evid. 403, "[i]ts probative value was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *Id.* On appeal, we afford a trial court's construction of a Rule 403 balancing substantial discretion. *See Veranda Beach Club Ltd. Partnership v. Western Sur. Co.,* 936 F.2d 1364, 1372 (1st Cir. 1991). Finding no abuse of discretion, we affirm the district court's determination.

 The defendant also challenges the admission of evidence of his involvement in a car ramming incident hours prior to his encountering K. in her driveway. Lowe asserts that the evidence should have been excluded as prior bad acts evidence under Fed.R.Evid. 404(b) and 403. Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

Fed.R.Evid. 404(b). In the instant case, the district court admitted the car ramming evidence as probative of his desire for sex and of his motive for committing carjacking.

 Lowe argues that the evidence did not have any relevance to his desire for sex because he conceded having sex with K. To prevent the admission of bad acts evidence, a defendant's offer to concede knowledge and/or intent issues must: (1) express a clear and unequivocal intention to remove the issue such that, in. effect if not in form, it constitutes an offer to stipulate, and (2) the concession must cover the necessary substantive ground to remove the issue from the case. *See United States v. Garcia,* 983 F.2d 1160, 1174 (1st Cir.1993). Lowe's concession fails to satisfy the second prong of this test. Evidence that is probative of Lowe's desire for sex is also relevant to show motive and intent to commit kidnapping and interstate transportation for illegal sexual activity. However, the defendant conceded to nothing more than having *consensual sex* with K. He did not concede the element of intent required to prove kidnapping and the Mann Act offense.· Thus, the fact that Lowe admitted to having sex with K. did not remove the issue of intent from the case.

 The district court also properly admitted the car-ramming evidence as probative of Lowe's motive and intent to carjack. The evidence showed that Lowe damaged his truck in the ramming, and ˙the police then towed the truck. The jury could have inferred from the evidence that the defendant needed to procure another vehicle to evade the Lowell police˙ who were searching for him.

 Lastly, despite Lowe's arguments to the contrary, the probative value of the evidence was not substantially outweighed by the risk of unfair prejudice under Rule 403. In its jury instructions on the challenged evidence, the district court warned:

> The only use you may make of Mr. Lowe's involvement in the car crash is to determine whether he had the intent to commit the offenses charged in the indictment. You are free to determine that Mr. Lowe's alleged involvement in the car crash is not probative of his intent to commit the offense with which he is charged. You may not consider evidence of the car crash as a substitute for proof. that the defendant committed the offenses charged, nor may

you consider evidence of the car crash as proof that the defendant has a propensity to engage in criminal acts or has a bad character.

Transcript at 9:112–113. Here, the district court minimized the potential for prejudice by telling the jury explicitly not to draw the forbidden inference. *Cf. United States v. Tuesta–Toro*, 29 F.3d 771, 775 (1st Cir.1994) (finding potential for prejudice minimized by contemporaneous jury instruction which was reiterated in final charge). Thus, we find no error.

■ Lowe's final evidentiary challenge relates to the sufficiency of the evidence to convict him of kidnapping K. Lowe argues that since kidnapping is coextensive with the Mann Act, which also requires transportation or confinement, the district court may not convict him of kidnapping if the degree of transportation or confinement imposed to commit the kidnapping is no greater than that required for the Mann Act, citing *Government of Virgin Islands v. Berry*, 604 F.2d 221, 227 (3d Cir.1979); *United States v. Howard*, 918 F.2d 1529, 1535–36 (11th Cir.1990). In other words, Lowe contends that since the alleged transportation and confinement of K. was merely incidental to the Mann Act violation, these acts were insufficient to support a conviction for kidnapping.

■ The Mann Act and federal kidnapping charges are separate and distinct offenses with different underlying congressional purposes. *See United States v. Jones*, 808 F.2d 561, 566 (7th Cir.1986); *United States v. Phillips*, 640 F.2d 87, 95 (7th Cir.1981). "[The] congressional intent of ... the Mann Act was to protect the morals of the community, while the purposes of the kidnapping statute was to protect the liberty and life of the victim." *See Phillips*, 640 F.2d at 95, citing *Seadlund v. United States*, 97 F.2d 742, 747 (7th Cir.1938). It is irrelevant that the kidnapping may have been incidental to the Mann Act offense as long as the government proved the elements of the kidnapping charge.

■ For the kidnapping charge, the government needed to show that Lowe knowingly and willfully seized, abducted, or con-

fined K., transported her in interstate commerce, and held her for "ransom, reward or otherwise." *See* 18 U.S.C. § 1201. The term "otherwise" can include sexual gratification. *See United States v. Sriyuth*, 98 F.3d 739, 746–47 (3d Cir.1996). The Mann Act required the government to prove that the defendant knowingly and willfully transported K. in interstate commerce for purposes of prostitution or any other illegal sexual activity. *See* 18 U.S.C. § 2421. Consent is a defense to kidnapping but not to a Mann Act charge. *See Jones*, 808 F.2d at 565.

■ On the record, we find sufficient evidence of the elements of kidnapping. In evaluating the sufficiency of evidence underlying a conviction, we view the evidence in the light most favorable to the prosecution. *See Ruiz*, 105 F.3d at 1494. The evidence shows that Lowe took and carried away K. against her will and held her for over six hours. During the course of the abduction, Lowe forced K. to travel with him from Massachusetts to New Hampshire and back. In addition, he forced her to perform oral sex on him as well as raping her vaginally. The government firmly established the elements of the kidnapping charge, and therefore, we affirm the conviction.

### D. Appeal of Carjacking Sentence

■ Lowe appeals his 25–year sentence under 18 U.S.C. § 2119(2), which enhances the 15–year sentence under § 2119(1) "if serious bodily injury (as defined in section 1365 of this title) results" from the commission of a carjacking. Lowe asserts that the shorter sentence applies, arguing that K. did not suffer serious bodily injury as defined in the statute, and that even if the rape constitutes serious bodily injury, the rape is outside the coverage of the statute because it did not result from the force, violence and intimidation used to take the car.

Section 1365(g)(3) provides that "serious bodily injury" means bodily injury which involves:

(A) a substantial risk of death;

(B) extreme physical pain;

(C) protracted and obvious disfigurement; or

(D) protracted loss or impairment of the function of a bodily member, organ, or mental faculty ...

18 U.S.C. § 1365(g)(3). After reviewing the record, the district court determined that K. suffered "protracted ... impairment of ... mental facult[ies]." During trial, nearly 10 months after the crime, the court noted that K. was "extremely tearful through parts of her testimony, particularly when she [was] looking in the defendant's direction," and that she was in a "fragile" state. The record reflects, *inter alia,* that K. underwent at least 10 months of counseling at a rape crisis center. The district court properly enhanced Lowe's carjacking sentence. The record amply demonstrates that, as a direct consequence of the rape, K. suffered serious and continuing mental trauma, constituting a "protracted ... impairment of ... mental facult[ies]" under § 1365(g)(3). *Cf. United States v. Vazquez–Rivera,* 135 F.3d 172, 177–78 (1st Cir.1998) (holding that persistent psychological trauma resulting from rape qualified as protracted impairment of mental faculties, and therefore, as "serious bodily injury").

██ With respect to Lowe's claim that the rape was not the result of the carjacking, we find our recent decision in *Vazquez–Rivera,* 135 F.3d at 178, dispositive. The defendant in that case, who also raped his carjacking victim, raised a similar argument. However, we determined that "the choice of the word 'results' in the statutory phrase 'if serious bodily injury ... results' suggests that Congress intended to cover a fairly broad range of consequences flowing from a carjacking." *Id.* In addition, we noted that "the legislative history characterized the provision as imposing the enhancement when the carjacking 'involves bodily injury,' ... which supports the view that the injuries covered are not limited to those resulting from the 'taking' of a vehicle, but also include those caused by the carjacker at any point during his or her retention of the vehicle." *Id.* (internal citations omitted). Accordingly, we conclude that the carjacking resulted in serious bodily injury.

## III. CONCLUSION

For the foregoing reasons, the defendant's conviction is ***affirmed.***