UNITED STATES, Appellee,

v.

Jose Miguel MATEO–SANCHEZ,
Defendant, Appellant.

United States, Appellee,

v.

Santos De Aza–Paez, a/k/a Santos De
Asa, Defendant, Appellant.

United States, Appellee,

v.

Rafael Perez–Cabrera, Defendant,
Appellant.

United States, Appellee,

v.

Carlos Julio Cipriano, Defendant,
Appellant.

United States of America, Appellee,

v.

Victor Hernandez–Canario,
Defendant, Appellant.

Nos. 97–2294, 97–2295, 98–1100,
98–1101, 98–1102.

United States Court of Appeals,
First Circuit.

Heard Nov. 5, 1998.

Decided Feb. 3, 1999.

Rehearing and Suggestion for Rehearing
En Banc Denied March 19, 1999.

Teodro Méndez–Lebrón for appellant José Miguel Mateo–Sánchez.

Luis Rafael Rivera for appellant Santos de Aza–Paez.

Linda Backiel for appellant Rafael Pérez–Cabrera.

Edgardo Rodríguez–Quilichini, Assistant Federal Public Defender, with whom Joseph C. Laws, Jr., Federal Public Defender, was on brief for appellant Carlos Julio Cipriano.

Francisco M. Dolz–Sánchez, by appointment of the Court, for appellant Víctor Hernández–Canario.

José A. Quiles–Espinosa, Senior Litigation Counsel, with whom Guillermo Gil, United States Attorney, Camille Vélez–Rivé, Assistant United States Attorney, Nelson Pérez–Sosa, Assistant United States Attorney, and José A. Ruiz–Santiago, Assistant United States Attorney, were on brief, for appellee.

Before TORRUELLA, Chief Judge,
HALL,* Senior Circuit Judge, and LIPEZ, Circuit Judge.

CYNTHIA HOLCOMB HALL, Senior Circuit Judge.

Defendants José Miguel Mateo–Sánchez ("Mateo"), Santos de Aza–Páez ("de Aza"), Rafael Pérez–Cabrera ("Pérez"), Carlos Julio Cipriano ("Cipriano"), and Victor Hernández–Canario ("Hernández") appeal their convictions and sentences for conspiracy to possess with intent to distribute 380 kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. The district court sentenced Mateo, de Aza, Cipriano, and Hernández to 292 months in prison, and sentenced Pérez to 151 months in prison. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and we affirm.

* Of the Ninth Circuit, sitting by designation.

## FACTS

Acting on a tip from an informant that drugs were to be smuggled into the Los Colchos area on the night of May 2, 1996, a joint task force of U.S. Customs agents and Puerto Rico police officers set up surveillance of the area. Los Colchos is a heavily wooded and uninhabited coastal area that borders a naval base. The area can be accessed only by a small dirt road ("Los Colchos Road") that connects to a major road ("Road # 3"). During a perimeter inspection of the area, agents found a black Mazda pickup truck hidden by bushes that fit the description of the truck that the informant had claimed would be used in the smuggling operation. In addition, while driving along Los Colchos Road towards Road # 3, agents and officers passed within inches of a three-car caravan. The officers saw a green station wagon with one occupant, followed by a red Mazda pickup truck with two occupants and a gray Dodge pickup truck with two occupants. The officers left the scene to meet with other agents, and then returned to Los Colchos Road, where they positioned themselves in a wooded area approximately 150 feet from a gate ("Algodones gate"), which blocks vehicular access to a dirt road that leads from Los Colchos Road to Algodones beach.

At approximately 10:30 p.m., with a bright moon in the sky, agents heard the sound of a motor boat approaching, and observed the black Mazda pickup previously seen parked in the bushes, and the green station wagon and the red Mazda pickup that had been part of the caravan, drive down Los Colchos Road and stop at the Algodones gate. The agents watched as five individuals got out of the vehicles and met together for several minutes. The agents were unable to see the individuals' faces or to hear what they said.

Two of the individuals got into the black Mazda and drove up Los Colchos Road towards Road # 3. The agents radioed ahead to other agents, who were positioned at the entrance to Los Colchos Road, and requested them to detain the black Mazda. As the black Mazda approached the agents, the passenger, Cipriano, threw a cellular telephone

out the window. Agents detained both Cipriano and the driver, Hernández. A second cell phone was found next to Hernández. Cipriano was wearing black clothing.

About five to ten minutes later, the agents at Algodones gate observed one of the remaining three individuals get into the green station wagon and drive towards Road # 3. Agents radioed ahead, and the green station wagon was also stopped. The agents detained the driver, Mateo, and found a third cell phone in the pickup. Mateo was wearing black clothing.

At the same time that the individual got into the green station wagon, the other two remaining individuals started walking down the dirt road towards Algodones beach. Shortly thereafter, agents observed five or six individuals walk up the trail to Algodones gate while carrying packs on their shoulders. These individuals placed the packs between some bushes, and walked back towards Algodones beach. These individuals were not seen again.

A short time later, agents observed the two individuals who had been seen meeting at Algodones gate walk up the trail to Algodones gate while carrying packs on their shoulders. The individuals placed their packs in the bushes with the other packs, got into the red Mazda pickup, and drove up Los Colchos Road towards Road # 3. The agents again radioed ahead, and agents stopped the red Mazda as it approached Road # 3. The agents detained the driver, Cabrera, and the passenger, de Aza. Cabrera and de Aza were both wearing black clothing that was wet and covered with sand. It did not rain that night.

The agents waited a while longer, and then investigated the scene. The agents seized a total of eight packs from the bushes, six large sacks and two smaller ones. The sacks weighed approximately 380 kilograms, and their contents tested positive for cocaine. In addition, the agents found an assault rifle with the sacks. Nearby, the agents also found the grey Dodge pickup truck that was seen in the first three-vehicle caravan. Inside the pickup, the agents found ammunition, a knitted black cap, and a black T-shirt.

Cipriano, Hernández, Mateo, Pérez, and de Aza were indicted on one count of conspiracy to possess with intent to distribute approximately 380 kilograms of cocaine. All five defendants pled not guilty. At the close of the government's case, the district court denied all five defendants' Rule 29 motions for judgment of acquittal. The defendants did not testify at trial, and all five defendants were convicted. Cipriano, Hernández, Mateo, and de Aza were sentenced to 292 months in prison. Pérez was sentenced to 151 months in prison.

## DISCUSSION

### I

■ Hernández and Cipriano contend that the police lacked probable cause to arrest them. However, both Hernández and Cipriano failed to make a pretrial challenge to the indictment, and have therefore failed to preserve this issue for review on appeal. *United States v. Latorre*, 922 F.2d 1, 6 (1st Cir. 1990), *cert. denied*, 502 U.S. 876, 112 S.Ct. 217, 116 L.Ed.2d 175 (1991).

### II

■ All five defendants contend that the district court erred by denying their Rule 29 motions for judgment as a matter of law because there was insufficient evidence to support their convictions. The defendants argue that the evidence established their mere presence at the scene without establishing their actual participation in the conspiracy. We will reverse the district court's denial of the defendants' Rule 29 motions only if, viewing the entirety of the evidence in the light most favorable to the government and drawing all legitimate inferences from that evidence, no rational trier of fact could have found the defendants guilty beyond a reasonable doubt. *See United States v. Reed*, 977 F.2d 14, 17 (1st Cir.1992). The district court did not err.

■ The government introduced evidence that showed that the five defendants passed within inches of agents as they drove in a caravan down a dirt road to an isolated beach. The defendants then met with each

other late at night, in a deserted and heavily wooded area that had limited access, as a motor boat approached at the time and place where an informer had told police drugs would be smuggled, and where in fact approximately 380 kilograms of cocaine was offloaded. The defendants were wearing dark clothing, carrying cell phones, and driving pick up trucks and a station wagon to help transport the large quantity of cocaine. Pérez and de Aza were seen carrying the packs that contained cocaine. An assault weapon was found with the cocaine, and one of the trucks driven into the area contained a bag with ammunition. The defendants offered no plausible explanation for their presence in this area so late at night. The evidence therefore supported the jury's verdict for conspiracy to possess with intent to distribute approximately 380 kilograms of cocaine. *See United States v. de la Cruz–Paulino,* 61 F.3d 986, 999 (1st Cir.1995) (circumstances in which presence implies participation); *United States v. Tejeda,* 974 F.2d 210, 213 (1st Cir.1992) (jurors allowed to use common sense and draw reasonable inferences based on "natural inclinations of human beings"); *United States v. Ortiz,* 966 F.2d 707, 712 (1st Cir.1992) (inference that criminals rarely invite innocent persons to witness crimes), *cert. denied,* 506 U.S. 1063, 113 S.Ct. 1005, 122 L.Ed.2d 154 (1993).

### III

Hernández and Cipriano contend that the district court erred by attributing to them at sentencing an improper amount of cocaine because there was no evidence to demonstrate that such a large amount of cocaine was foreseeable. We will reverse the district court's quantity determination only if it was clearly erroneous. *See United States v. Miranda–Santiago,* 96 F.3d 517, 524 (1st Cir.1996). The district court did not err.

It was proper to attribute to Hernández and Cipriano all reasonably foreseeable quantities of cocaine that were within the scope of the conspiracy. *See id.* Hernández and Cipriano were present at the smuggling location with three other coconspirators where they were to meet a boatload of smugglers, suggesting a large-scale operation.

The conspirators used three pick up trucks and a station wagon, suggesting that a large quantity of drugs would need to be transported. An assault weapon was found with the cocaine, suggesting that the amount of drugs would be worth protecting. The district court's finding that Hernández and Cipriano were liable for the full amount of cocaine was therefore not clearly erroneous.

### IV

Hernández, Cipriano, Pérez, and de Aza contend that the district court erred by denying their requests for a two-level downward departure for their roles as minor participants under U.S.S.G. § 3B1.2. We will reverse the district court's denial of a request for a minimal participant downward departure only if its finding that the defendants were not minor participants was clearly erroneous. *See United States v. Gonzalez–Soberal,* 109 F.3d 64, 73 (1st Cir.1997). The defendants had the burden to prove their entitlement to a minor participant downward departure. *See id.* The district court did not clearly err because the defendants failed to satisfy their burden. *See United States v. Coneo–Guerrero,* 148 F.3d 44, 50 (1st Cir.1998) (affirming district court's denial of minor participant departure to defendants who claimed status as transporters of cocaine with less responsibility than deceased boat captain).

In addition, Pérez argues that the district court deprived him of his due process right to be sentenced on the basis of substantially correct information because the court limited its consideration of the participants in the conspiracy to his codefendants. This argument is without merit because the district court specifically considered individuals implicated in the conspiracy other than Pérez's codefendants. After considering the evidence that Pérez wished the district court to consider, the district court concluded that the evidence fell far short of convincing the court that Pérez's role in the offense was minor. The district court therefore did not deprive Pérez of his due process rights.

## V

All five defendants contend that the district court erred by enhancing their sentences under U.S.S.G. § 2D1.1(b)(1) for possession of a weapon in connection with the conspiracy. We review the factual findings underlying the district court's dangerous weapon enhancement for clear error. *United States v. Lagasse*, 87 F.3d 18, 21–22 (1st Cir.1996). The district court did not err.

Ammunition was found in one of the pickup trucks that was initially driven down the Los Colchos Road. The presence of ammunition in that truck suggests that the weapon was possessed by the coconspirators well before the boat was offloaded. In addition, Pérez and de Aza were seen placing sacks of cocaine where the gun was found. From this location, the weapon was readily available to protect both the conspirators and the drugs. Once the government demonstrated that the weapon was "readily available to protect either the participants themselves during the commission of the illegal activity or the drugs and cash involved in the drug business," the burden shifted to the defendants to persuade the court "that a connection between the weapon and the crime [wa]s clearly improbable." *See United States v. McDonald*, 121 F.3d 7, 10 (1st Cir.1997) (government's burden satisfied by showing gun found in bathroom of defendant's house that was command post for drug-trafficking activities). The defendants, however, failed to satisfy their burden of demonstrating that the connection between the weapon and the conspiracy was clearly improbable. *See id.* (defendant failed to satisfy burden by failing to provide evidentiary support for denial of knowledge of weapon or to suggest explanation for presence of gun). Therefore, the district court did not err by enhancing the defendants' sentences under U.S.S.G. § 2D1.1.

## VI

Pérez and de Aza contend that they were deprived of their right to a fair trial because the district court failed to strike as irrelevant and prejudicial references made at the trial to the assault weapon and ammunition found at the scene. Although Pérez waived this argument by failing to object when the government offered the gun into evidence,[1] *see United States v. Taylor*, 54 F.3d 967, 972–73 (1st Cir.1995), we will give him the benefit of the doubt and address the merits of his claim.

Pérez and de Aza argue that the weapon was irrelevant because the government failed to introduce evidence linking them to the weapon. However, as discussed above, ammunition found in one of the trucks suggests that the weapon was available to the conspirators well before the boat was offloaded. In addition, de Aza was seen placing a sack of cocaine with other sacks of cocaine where the weapon was found. Consequently, the government did provide evidence connecting Pérez and de Aza to the weapon.

Pérez and de Aza argue that, although the weapon was mentioned in the indictment, the weapon was not relevant to any element of the offense charged. We disagree. The assault weapon was relevant because it was one of the means by which the defendants protected themselves and the cocaine conspiracy. *See United States v. Cresta*, 825 F.2d 538, 554 (1st Cir.1987), *cert. denied sub nom., Impemba v. United States*, 486 U.S. 1042, 108 S.Ct. 2033, 100 L.Ed.2d 618 (1988).

Pérez and de Aza also argue that the weapon was prejudicial to their defense because it presented a clear danger of overwhelming the evidence. Although evidence unfavorable to the defense is always to some extent prejudicial, the weapon was not impermissibly prejudicial. *Cf. id.* In addition, the admission of the weapon could not have overwhelmed the 380 kilograms of cocaine unloaded in furtherance of the conspiracy.

## VII

Mateo contends that the district court erred by allowing the government to comment on his silence at trial. Specifically,

---

1. De Aza, the only defendant who objected when the weapon was offered into evidence, objected to admission of the weapon on grounds that it lacked foundation. The district court, however, properly overruled that objection because the government laid a foundation for its admission.

Mateo argues that when the prosecutor framed arguments to the jury in the form of, "Ask yourselves" what the defendants were doing in the Los Colchos area on the night in question, the prosecutor was in fact commenting on the fact that Mateo had not testified at trial.[2] We disagree. The prosecutor's statements cannot be construed as a comment on Mateo's silence. *See United States v. Lavoie,* 721 F.2d 407, 408 (1st Cir. 1983), *cert. denied,* 465 U.S. 1069, 104 S.Ct. 1424, 79 L.Ed.2d 749 (1984). Therefore, there was no error.

## CONCLUSION

Based on the foregoing, we affirm the judgment of the district court.

**AFFIRMED.**

---

**2.** Although the record does not reflect that Mateo objected to this portion of the government's closing arguments, Mateo's attorney claimed at oral argument that the objection was made at a side bar conference. The government, however, disputed this claim at oral argument. Although it was the duty of Mateo's attorney to have his objection recorded, we will give him the benefit of the doubt and assume that the objection was made.