**UNITED STATES, Appellee,**

v.

**Reynaldo VAZQUEZ–RIVERA,**
**Defendant—Appellant.**

No. 97–1267.

United States Court of Appeals,
First Circuit.

Heard Dec. 4, 1997.

Decided Feb. 2, 1998.

Edgardo Rodríguez–Quilichini, Assistant Federal Public Defender, San Juan, PR, with whom Joseph C. Laws, Jr., Federal Public Defender, Hato Rey, PR, was on brief, for appellant.

José A. Quiles–Espinosa, Senior Litigation Counsel, San Juan, PR, with whom Guillermo Gil, United States Attorney, and Nelson Pérez–Sosa, Assistant United States Attorney, Hato Rey, PR, were on brief, for appellee.

Before TORRUELLA, Chief Judge, BOUDIN and STAHL, Circuit Judges.

TORRUELLA, Chief Judge.

This case is before us for the second time. *See United States v. Vazquez–Rivera,* 83 F.3d 542 (1st Cir.1996). In the first appeal, we affirmed Appellant's conviction for carjacking in violation of 18 U.S.C. § 2119, but concluded that the sentence was flawed because the factual record had not been sufficiently developed to support the sentencing enhancement imposed. We thus remanded the case to allow the district court to reconsider sentencing options. *Id.* at 543. The version of the carjacking statute in force at the time the crime occurred, June 24, 1994, provided for an enhancement of the imprisonment option available to the sentencing judge of up to 10 additional years—to a maximum of 25 years—if "serious bodily injury" resulted from the commission of the crime. 18 U.S.C. § 2119(2).[1] That provision

---

**1.** Before its amendment in 1996, section 2119 read, in pertinent part:

Whoever, possessing a firearm as defined in Section 921 of this Title, takes a motor vehicle that has been transported, shipped, or received in interstate commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall

(1) be fined under this Title or imprisoned not more than 15 years, or both,

(2) if serious bodily injury (as defined in section 1365 of this title) results, be fined under this title or imprisoned not more than 25 years, or both . . . .

refers to 18 U.S.C. § 1365 for the definition of what constitutes "serious bodily injury" under the carjacking statute. Section 1365(g)(3), which codifies part of the Federal Anti–Tampering Act, Pub.L. No. 98–127, § 2, 97 Stat. 831 (1983), provides that:

[T]he term "serious bodily injury" means injury which involves -

(A) a substantial risk of death;

(B) extreme physical pain;

(C) protracted and obvious disfigurement; or

(D) protracted loss or impairment of the function of a bodily member, organ, or mental faculty. . . .

The district court concluded, and we agreed, *Vazquez–Rivera*, 83 F.3d at 546–47, that the prosecution proved that the carjacking victim was raped by Appellant during the commission of the charged offense. The trial court went on to rule, however, that the 10 year imprisonment enhancement was warranted, based on a determination that the rape caused the victim "extreme physical pain." Although we concurred with the district court's views that this crime was "degrading, heinous, cruel, and brutal," *id.* at 547, we reluctantly vacated the sentence because we found the record devoid of any evidence that would support the district court's finding of "extreme physical pain," as that term was defined in the aforementioned legislation. The record did not contain any description of the assault other than that it took place while the victim was in a debasing physical position, and that the rape lasted approximately five minutes. A medical account introduced as part of the presentence report reflected that her physical condition only two hours after the rape presented no signs of any cuts or bruises in her vaginal area. It was otherwise silent regarding any other physical manifestations of this crime.

On this first appeal the Government made a belated attempt to salvage the sentencing enhancement by arguing the fourth prong of Section 1365(g)(3), to the effect that the victim had also suffered extreme mental trauma. Unfortunately, with the meagerness of the record before us, we were unable to meet the statutory standard which required that "protracted loss or impairment of the func-

tion of a . . . mental faculty" exist. This language, we ruled, mandated "evidence of the specific, objective types of harm set out in the statute," *id.* at 548 n. 9, the phraseology of which was designed by *Congress* to deal with the *tampering of consumer goods*, not rape. *Id.*

The only evidence available to us regarding the victim's mental condition was contained in the presentence report, which indicated that the victim had received no professional counseling or assistance, but had relied on the support of her family and boyfriend. It also had her statement to the probation officer that the ordeal "had a devastating effect on her life, family, and consensual relationship." *Id.*, at 548. Although we recognized that "even a rape that causes no physical pain is a unique and reprehensible physical and psychic invasion," *id.*, the statute in question, by its terms, limited our hand to specific types of injury. This prevented us from concluding "that any rape, regardless of the circumstances, [was the] equivalent [of] the[ ] specified harms" necessary for a triggering of the enhancement. The interpretation proposed by the government, we believed, "would broaden measurably the limited category of injuries that *Congress* designated as justifying a substantial increase in punishment for carjacking." *Id.* (emphasis supplied). Without further indication from that body, we felt unauthorized to take the expanded view of Section 1365 proposed by the Government and adopted by the district court. Thus we remanded to allow the Government to "provide some evidentiary basis upon which the court may conclude that one or more of the statutory conditions of harm occurred." *Id.*

After remand, but before resentencing of appellant by the district court, Congress's attention was momentarily focused on this court's decision. *See* H.R.Rep. No. 104–787, at 2–3, 142 Cong. Rec. 3409, 3410–11 (1996). This scrutiny resulted in the enactment of the so-called Carjacking Correction Act of 1996, Pub.L. No. 104–217, 110 Stat. 3020, which became effective on October 1, 1996, the intended purpose of which was to rectify this court's interpretation of the term "seri-

ous bodily injury" as defined in Section 1365 of Title 18. *See* 142 Cong. Rec. at 3410–11; Statement on signing the Carjacking Correction Act of 1996 (Pres. Bill Clinton), 1996 WL 13336081 (October 1, 1996).

Pursuant to this new statute, Section 2119(2) of Title 18 was amended to redefine the term "serious bodily injury" contained in Section 1365 of that Title to include any conduct constituting "sexual abuse," as that term is defined in Sections 2241 and 2242 of Title 18.[2] The application of this legislation to appellant is one of the issues we must decide in the present, and latest, review of his sentence.

### The Present Appeal

The case was called for re-sentencing on January 17, 1997. Prior thereto the government filed a motion announcing its intention to seek an enhanced sentence pursuant to 18 U.S.C. § 2119(2), by introducing evidence during the sentencing hearing that the victim suffered "serious bodily injury," arguing, *inter alia*, that the amendment to that section contained in the Carjacking Correction Act of 1996, *supra*, was applicable to appellant upon resentencing. Appellant opposed the government's proposal, countering that the application of that provision to him for the crime for which he had previously been convicted violated the Ex–Post Facto Clause of the Constitution.[3] Appellant further contended that any "serious bodily injury" suffered by his victim resulted from the rape itself and not from the carjacking, and therefore that such injury could not serve as the basis for enhancing his sentence under the carjacking statute.

At the outset of the sentencing hearing, the district judge made reference to our opinion, *supra*, at 544, stating that the purpose of the proceeding was "to *reconsider* sentencing options" (emphasis supplied) in view of the fact that a prior panel of this court had concluded "that the factual record ha[d] not been sufficiently developed to support the sentence enhancement." *Id.* The district court then ruled that the 1996 amendment to the carjacking statute was a "mere clarification" of the original legislation, and thus was applicable to appellant's remanded sentencing. The court stated, in the alternative, that it "presume[d] that the government would present sufficient factual instances now so that the Court can support its finding ... even under the law as it was before the clarification...." Finally, the court held that appellant's action of "taking" the vehicle in question, an element of the carjacking crime for which he was convicted, 18 U.S.C. § 2119(2), was not consummated until after he drove away, having abandoned the victim of the rape on a lonely beach. Thus, the court rejected appellant's contention that any serious bodily injury suffered from the rape was not the result of the carjacking itself.

The government proceeded to present evidence regarding the victim's injuries. This consisted of the testimony of former Assistant U.S. Attorney Sylvia Carreño–Coll and of Mercedes Rodríguez–López, a social psychologist. A letter dated September 30, 1995, from the victim to the sentencing judge, was also made part of the sentencing record.

Carreño-Coll testified that as the Assistant U.S. Attorney in charge of prosecuting this case she visited the scene of the rape prior to the trial, accompanied by the victim. During the course of this viewing and the related conversations with the victim, the victim told her "how helpless she felt, how threatened, the terror that she felt that night," that as they approached the scene of the crime the victim became "increasingly nervous and visibly upset," and "became dizzy ... started

---

2. Section 2 of Pub.L. No. 104–217 provides:

Section 2119(2) of title 18, United States Code, is amended by inserting, "including any conduct that, if the conduct occurred in the special maritime and territorial jurisdiction of the United States, would violate section 2241 or 2242 of this title" after "(defined as in section 1365 of this title.)"

18 U.S.C. §§ 2241 and 2242 establish the crimes of aggravated sexual abuse (by the use of force or threats of death, serious bodily injury, or kidnapping) and sexual abuse, respectively, within the special maritime and territorial jurisdiction of the United States.

3. U.S. Const. art. I, § 9, cl. 3:

No ... ex post facto Law shall be passed.

crying and basically ... had to be carried back to the car because she couldn't stand." On the return trip to San Juan—the rape took place in a remote beach about 40 miles distant—"she cried all the way back ... [,] was extremely quiet and ... had to [be] take[n] ... to her house." Carreño–Coll also testified that during other pretrial interviews with the victim, when they "got to the part of the rape, ... she would become very upset, very nervous." At the district court's prompting she also testified that the victim told her "that she feared for her life throughout the ordeal," "felt deeply humiliated," "felt pain ... and deeply violated while the rape was taking place," and "felt dirty and in pain throughout the event."

Mercedes Rodríguez–López testified that she was a licensed social psychologist with experience in the health environment of victims who survived crime, particularly victims of violence or rape. She was a counselor and director of the Rape Victims Health Center and stated that she had approximately twenty years of experience dealing with rape victims. Rodríguez–López indicated that she held two personal interviews with the victim, the second one a week before the hearing, as well as six or seven telephone conversations, for a total of about twelve to fifteen hours of interviews. In addition the victim filled out a questionnaire forwarded to her by Rodríguez–López dealing with the subject of the sentencing hearing. Rodríguez–López also filed a written report which was generally repetitious of her testimony.

Rodríguez–López indicated that the victim "has not been able to survive the effects of this rape[;] she is confronting some acute reactions which ... are chronic due to the prolonged period she has been through them and the least I can say about the process that [the victim] has gone [through] is these are the most devastating ones that I have ever seen about someone who has gone through a rape process." Rodríguez testified that the victim suffered non-resolved rape trauma and post-traumatic stress syndrome, which manifested itself as "fear, the sense of distrust, physical discomfort, loss of energy, a loss of faith in life and the sensation that would it [sic] have been better off to die than

continue living are [sic] three years now after the rape as if the rape were virtual in this moment now." She concluded her testimony by saying that she "had no doubt whatsoever that the [victim's] physical pain was extreme at the time [of the rape], days after this rape and even now on a daily basis that pain is rekindled and in the emotional and mental level I have no doubt whatsoever that we are facing severe damage, extreme, critical of the emotional condition and which effect [sic] her function, individual, social, family level."

Rodríguez–López's report dated December 12, 1996, which is also part of the record, substantially supports her testimony at the hearing. It also documents that the victim has been unable to finish her college education, of which she has completed two and one half years, because of the emotional condition that she was suffering "as a consequence of the robbery, kidnapping and rape she suffered in 1994."

The government also introduced into evidence a letter dated September 30, 1995, directed by the victim to the trial judge, which the judge indicated was read by him prior to the original sentencing but not placed into the record because he felt that the presence of the press at that hearing would further stigmatize the victim. In her letter the victim indicates how the violation "was only the beginning of a long nightmare [in] which she do[es] not even dare go to the corner of the street without having someone accompanying" her. She is "afraid of anyone who stands near" her, and her "distrust in everything that surrounds [her] controls [her] life."

At the conclusion of the hearing the district judge reiterated his ruling that the 1996 amendment was applicable to appellant, and concluded that "the factual record is replete with evidence to support the finding that the victim did suffer extreme physical pain and that she is presently suffering from ... post traumatic stress syndrome [or rape trauma syndrome and because of] the presence of the disorder ..., her mental faculties have been affected in [sic] a large extent."

### The Ex Post Facto Issue

■ It is an elementary principle of our form of government, one ingrained in the history of our Nation, that ex post facto criminal laws are not to be tolerated. Thus the Constitution prohibits the retrospective application of criminal laws to the prejudice of a defendant. U.S. Const. art. I, § 9, cl. 3. In order to trigger this provision, (1) the law must be criminal in nature, *Collins v. Youngblood,* 497 U.S. 37, 41, 110 S.Ct. 2715, 2718, 111 L.Ed.2d 30 (1990); (2) it must be applied retrospectively, *Miller v. Florida,* 482 U.S. 423, 430, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987), that is, it must apply to events occurring before its enactment, *Lynce v. Mathis,* — U.S. —, —, 117 S.Ct. 891, 895, 137 L.Ed.2d 63 (1997); and (3) the application of the law must disadvantage the offender affected by it, *Weaver v. Graham,* 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981), by altering the definition of criminal conduct or increasing the punishment for the crime, *Lynce,* — U.S. at —, 117 S.Ct. at 895.

■ Measured against these criteria, there should be little doubt that the application of the provisions of the Carjacking Correction Act to appellant for the crime for which he was convicted violates the ex post facto clause of the Constitution. There is no question about the criminal nature of this statute; it was enacted in 1996 to be applied to a crime committed in 1994, thus its retroactive enforcement is patent; and it allows appellant to be punished more stringently than was permitted by this court's decision prior to the passage of the enactment.

■ Painting black lines on the sides of a horse and calling it a zebra does not make it one. Similarly, labeling the 1996 amendment a "clarification" of Congress's intent in the original law is legally irrelevant. In the first appeal of this case, this court decided what Congress's intention was when it enacted the original statute. *Vazquez–Rivera, supra,* 83 F.3d at 548. "Having achieved finality, ... a judicial decision becomes the last word of the judicial department with regard to a particular case or controversy, and Congress may not declare by retroactive legislation that the law applicable to that very case was something other than what the courts said it was."

*Plaut v. Spendthrift Farm, Inc.,* 514 U.S. 211, 227, 115 S.Ct. 1447, 1457, 131 L.Ed.2d 328 (1995). Thus, post hoc statements regarding the original legislative intent do not affect this court's previous, and final, finding as to what that intent was. Furthermore, as can be seen by the changes reflected in the new statute, in which the critical term, "serious bodily injury" is redefined from within the context of a statute designed to prevent tampering with consumer goods, to one concerned with sexual abuse, it is obvious that the "clarification" is more than merely cosmetic.

We are therefore required to consider the new factual record in the light of our interpretation of Section 2119(2), *before* it was amended in 1996.

### The new factual record

■ The new record is devoid of any valid evidence that will support a finding of extreme *physical* pain, as that term was interpreted by us in the first appeal. *Vazquez–Rivera, supra,* at 547. We are thus unable to approve the district court's findings in this respect.

■ There is, nevertheless, sufficient evidence to support the conclusion that the victim has suffered a "protracted ... impairment of ... mental facult[ies]." 18 U.S.C. § 1365(g)(3)(D). Without unduly repeating what has previously been stated in this opinion, *ante* at 174–75, the evidence establishes that as a direct consequence of the rape, the victim is very much emotionally disturbed, and suffers a chronic mental condition, which persists even though several years have elapsed since her grievous incident. She is afraid to be around strangers or to leave her house unaccompanied, is morose, has crying spells, feelings of physical discomfort, despondency, and fear, and has a loss of physical energy. Her malady, diagnosed as rape trauma or post-traumatic stress disorder, has not only prevented her from leading a normal life, it has truncated the completion of the remaining one and one-half years of her college education because she is unable to concentrate in academic endeavors, cannot engage in social discourse and is not tolerant of the company of others. We believe this evidence sufficiently fills the lacuna left open

in the government's first request for the enhancement provided by 18 U.S.C. § 2119(2) for cases in which a carjacking results in "serious bodily injury" by leading to the "protracted impairment of ... [the victim's] mental facult[ies]." 18 U.S.C. § 1365(g)(3)(D).

■ One last argument remains unaddressed, appellant's contention that even if the rape constitutes "serious bodily injury," it did not result from the carjacking itself, and is therefore outside the coverage of the statute. By its terms, the carjacking statute seeks to punish the use of force, violence, or intimidation to "take" a vehicle, and it further provides an enhancement of the punishment when the taking of the vehicle results in serious bodily injury. Appellant contends that when a carjacking victim suffers an injury unrelated to the taking of the vehicle, the harm, however severe, falls outside the ambit of the carjacking statute. He therefore argues that in this case, the rape was not the "result" of the carjacking because it was not intended to assist in the taking of the vehicle.

■ Appellant's argument, which we noted but did not resolve in the first appeal, *see Vazquez–Rivera*, 83 F.3d at 548 n. 10, raises the not insubstantial problem of delineating the precise temporal limits of the crime of carjacking. Nevertheless, although we need not provide a comprehensive answer to this problem, we find appellant's proposed construction of the carjacking statute to be unconvincing. We begin by noting that there is no textual basis for asserting that the injury must be "necessary to" or "intended to effectuate" the taking of the vehicle itself. To the contrary, the choice of the word "results" in the statutory phrase "if serious bodily injury ... results" suggests that Congress intended to cover a fairly broad range of consequences flowing from a carjacking. Moreover, the legislative history characterized the provision as imposing the enhancement when the car-

jacking "*involves* bodily injury," *see* Anti Car Theft Act, Pub.L. No. 102–519, *reprinted in* 1992 U.S.C.A.A.N. 2847, at 2865 (emphasis added), which supports the view that the injuries covered are not limited to those resulting from the "taking" of a vehicle, but also include those caused by the carjacker at any point during his or her retention of the vehicle. *Cf. United States v. Cruz*, 106 F.3d 1134, 1137 (3d Cir.1997) (holding that a young woman raped during a carjacking was a "victim" of the carjacking for sentencing purposes and that the court could "look at all the conduct underlying the offense of the conviction"). Furthermore, this view accords with our interpretation of sentencing enhancement regimes generally. *See United States v. Rivera–Gomez*, 67 F.3d 993, 1001 (1st Cir.1995) (noting that the sentencing regime in 18 U.S.C. § 2119 "represents a congressional judgment that the punishment for committing the crime of carjacking should be harsher if the crime, as actually perpetrated, includes conduct that produces the demise of the victim."). This interpretation is also consistent with the tenor of our prior holding regarding the admissibility of the evidence of the rape to prove an element of the crime, the use of a firearm, which was first seen by the victim when appellant placed the weapon on top of the car to intimidate her immediately prior to raping her.

■ We thus conclude that, under the circumstances of this case, the carjacking resulted in serious bodily injury, namely, the impairment of the victim's mental faculties. Therefore, the district court did not abuse its discretion in imposing the sentencing enhancement provided by Section 2119(2).[4]

For the reasons stated in this opinion, the decision of the district court is **AFFIRMED**.

---

4. We also find that the rule of lenity does not prevent the application of the section 2119(2) enhancement to appellant. "The rule of lenity applies only if, after seizing everything from which aid can be derived, [a court] can make no more than a guess as to what Congress intended." *Reno v. Koray*, 515 U.S. 50, 65, 115 S.Ct. 2021, 2029, 132 L.Ed.2d 46 (1995). A prior panel of this court has thus noted that, "[p]ut

bluntly, the rule of lenity cannot be used to create ambiguity when the meaning of a law, even if not readily apparent, is, upon inquiry, reasonably clear." *United States v. Nippon Paper Ind. Co., Ltd.*, 109 F.3d 1, 8 (1st Cir.1997). As our discussion above demonstrates, we do not find section 2119(2) to be ambiguous—only somewhat complicated.