**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 9 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

DAVID WHITETHORNE,

Defendant-Appellant.

No. 97-2165
(D.C. No. CR-96-68-MV)
(D. New Mexico)

**ORDER AND JUDGMENT**[*]

Before **BALDOCK**, **BARRETT**, and **LOGAN**, Circuit Judges.

Defendant David Whitethorne appeals his conviction by a jury of assault resulting in serious bodily injury, in violation of 18 U.S.C. § 113(a)(6), and the district court's calculation of his sentencing offense level. Defendant asserts that there was insufficient evidence that he inflicted a "serious bodily injury" on Jason Arviso as defined by § 113(a)(6) and that the district court erred by increasing his offense level by four.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Because the record reveals sufficient evidence on which a jury could find beyond a reasonable doubt that defendant inflicted a serious bodily injury under the statute, and this evidence also supports the four-level increase, we affirm.

I

This case arose from an altercation between defendant, Jason Arviso and Russell Tom. The three had been drinking when defendant and Arviso began to hit each other. Tom then attempted to break it up, and although he initially testified he was only trying to stop the fight, he later admitted he hit and kicked defendant after defendant punched him. At some point defendant stabbed Arviso.[1] Neither Tom nor Arviso was armed with a knife or other weapon. Defendant walked off, and Tom and a friend put Arviso in a truck and took him to the hospital emergency room.

Arviso was treated by Dr. Neville Davis, who testified that upon arrival Arviso was unresponsive. Arviso was a three on the Glascow Scale on which fifteen is fully conscious. He was bleeding heavily over his right clavicle, and Dr. Davis thought he might have a severed major artery. Arviso's blood pressure was low[2] and he was tachycardic--his heart rate was fast and his respiratory rate was low. He also had wounds

---

[1] Defendant's theory of self-defense was that he only inflicted the stab wounds on Arviso after Arviso and Tom and knocked him on the ground and kicked him in the head and back. The jury rejected this theory.

[2] Arviso's blood pressure when he arrived at the hospital was 60 over 40; normal blood pressure in a young male is around 100-120 over 70-80.

to his neck, back, and side.  The wounds were of the type that a knife would make, and all four required sutures.

Dr. Davis stopped the bleeding, and Arviso's blood pressure normalized.  The doctor gave Arviso four liters of intravenous fluid (saline solution) in the first half hour to increase his blood volume.[3]  Before he was released later that day, Arviso was given a total of seven liters of fluid.

At trial, defense counsel suggested that Arviso's unresponsiveness was caused by his blood-alcohol level of .256.  Dr. Davis testified that a .256 blood-alcohol level could cause unresponsiveness if a person had not been drunk before, but that Arviso's low blood pressure generally would not be caused by intoxication, which usually results in elevated blood pressure.  He also stated he would have given an intoxicated, nontrauma patient saline solution, although not as much.

Defendant was found guilty of two simple assault misdemeanors and two felonies: assault by striking, beating or wounding and assault resulting in serious bodily injury.  Defendant appeals only his conviction and sentence for the Arviso assault resulting in serious bodily injury, 18 U.S.C. § 113(a)(6).[4]

---

[3]  Dr. Davis testified that although he could have replaced Arviso's blood volume with a transfusion of blood, his practice was to use saline solution if possible to avoid the risks of transmitting disease.

[4]  The only copy of the court's amended judgment in the appellate record is appended to defendant's brief.  It erroneously lists the violation as being of 18 U.S.C. § 113(a)(3), whereas the indictment and the jury verdict clearly state the count as a

(continued...)

We first address defendant's argument that there was insufficient evidence to prove beyond a reasonable doubt that Arviso suffered "serious bodily injury" under 18 U.S.C. §113(a)(6).

> [I]n reviewing the sufficiency of the evidence to support a jury verdict, this court must review the record de novo "and ask only whether, taking the evidence--both direct and circumstantial, together with the reasonable inferences to be drawn therefrom--in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt."

United States v. Voss, 82 F.3d 1521, 1524-25 (10th Cir.) (quoting United States v. Urena, 27 F.3d 1487, 1489 (10th Cir.1994)), cert. denied, 117 S. Ct.. 226 (1996) (further quotation omitted).

The assault statute, 18 U.S.C. § 113(a)(6), provides for punishment for "[a]ssault resulting in serious bodily injury."  Section 113 (b)(2) adopts the definition of "serious bodily injury" in 18 U.S. C. §1365:

> (g)(3)  the term "serious bodily injury" means bodily injury which involves--
> (A)    a substantial risk of death;
> (B)    extreme physical pain;
> (C)    protracted and obvious disfigurement; or
> (D)    protracted loss or impairment of the function of a bodily member, organ, or mental faculty.

---

[4](...continued)
violation of § 113(a)(6).  The error was noted in the defendant's objections to the presentence report.  II R. Addendum, Objection No. 1.  We assume the error has been, or will be, corrected.  See Fed. R. Crim. P. 36.

18 U.S.C. §1365(g)(3). The jury instructions contained the statutory definition.

Defendant argues there was insufficient evidence to meet either the substantial risk of death prong, or the extreme physical pain prong.[5] We need not address whether the jury could have found sufficient evidence of extreme physical pain because our review of the record supports a finding that the injuries caused a "substantial risk of death."

Dr. Davis testified that when Arviso arrived at the emergency room he was unresponsive, his blood pressure and respiration were low, and his heart rate was elevated. He had lost a significant amount of blood. Defendant points out that on cross-examination, in response to the defense attorney's question "in looking back at [the clavicle injury] you've concluded that that was not a life-threatening injury?" Dr. Davis stated "That's a fair assumption since we were able to stop the bleeding." III R. 66. But on redirect, when asked "if Mr. Arviso had not been treated that night, if he had not received prompt medical attention, could his injuries have been life threatening?" Dr. Davis responded "Yes, on the assumption that the bleeding was unable to be stopped. He

---

[5] Defendant asserts that there was no showing of extreme physical pain, pointing out that Arviso was released about ten hours after being admitted to the emergency room, and that before his release was sitting up in bed, talking with friends. Further, Arviso did not testify, and there was no other testimony that he suffered extreme physical pain. Cf. United States v. Vazquez-Rivera, 135 F.3d 172, 174-75 (1st Cir. 1998) (record was "devoid of any evidence" supporting finding that victim suffered "extreme physical pain," as defined in § 1365(g)(3), where victim was assaulted and raped but there was no sign of cuts or bruises or other "physical manifestations of [] crime"); (later upholding finding of "serious bodily injury" based on evidence of "'protracted . . . impairment of . . . mental facult[ies]'").

had lost enough blood that he was--had a low blood pressure. Presumably if the bleeding hadn't been stopped, he could have continued to bleed out, theoretically, coded and died." Id. at 85; see also id. at 55 (if Arviso had not been brought to the hospital, he could have lost a sufficient amount of blood to cause cardiac arrest and death).

The question whether an injury is life threatening must be viewed at the time of the injury rather than, as defendant argues, after medical treatment. The record here contains evidence that Arviso's injuries caused a loss of blood which could have killed him if he had not been successfully treated. Thus, it supports our conclusion that a rational jury could have found Arviso's injury involved a "substantial risk of death."

III

Defendant also asserts the district court erred in increasing his offense level by four for "serious bodily injury." We review a sentencing court's findings of fact for clear error and give due deference to the district court's application of the guidelines to the facts. United States v. Talamante, 981 F.2d 1153, 1158 (10th Cir. 1992).

The guideline applicable to aggravated assault provides for a four-level increase in the offense level if any victim sustained "serious bodily injury," USSG § 2A2.2(b)(3)(B), defined as "injury involving extreme physical pain or the impairment of a function of a bodily member, organ, or mental faculty, or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation. As used in the guidelines, the definition of this term is somewhat different than that used in various statutes." USSG §

1B1.1, comment. (n.1 (j)).  This definition is broader than that under 18 U.S.C. § 1365(g)(3), in part because it applies if the injury requires medical intervention, including surgery or hospitalization.  Cf. United States v. Page, 84 F.3d 38, 43 (1st Cir. 1996 ) (no requirement for protracted impairment under guidelines; also noting courts have found two-hour stay in emergency room not hospitalization).

The district court specifically found that Arviso required medical intervention under the guideline.  Cf. United States v. Johnson-Dix, 54 F.3d 1295, 1312-13 (7th Cir. 1995) (upholding increase for "serious bodily injury" where victim's fibula was fractured by bullet and he was hospitalized for two days); United States v. Moore, 997 F.2d 30, 37 (5th Cir. 1993) (officer shot in leg but did not require surgery or hospitalization beyond emergency room treatment; no abuse of discretion in giving four-level increase); United States v. Corbin, 972 F.2d 271, 272-73 (9th Cir. 1992) (district court finding that two-layer closure with over twenty-five sutures constituted "surgery" under USSG § 2B3.1(b)(3)(B) was not error).  Although defendant argues that Arviso did not receive surgery or hospitalization, the ten-hour stay in the emergency room combined with the

other facts in this case support the district court's determination under the guidelines--particularly where we have upheld the jury finding that the victim suffered a substantial risk of death.

AFFIRMED.

Entered for the Court


James K. Logan
Circuit Judge