<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                 United States Court of Appeals
                     For the First Circuit
                      ____________________

No. 97-1452

                         UNITED STATES,

                           Appellee,

                               v.

                         PAUL E. LOWE,

                     Defendant, Appellant.

                      ____________________

          APPEAL FROM THE UNITED STATES DISTRICT COURT

               FOR THE DISTRICT OF MASSACHUSETTS

           [Hon. Patti B. Saris, U.S. District Judge]
        [Hon. Robert B. Collings, U.S. Magistrate Judge]

                      ____________________

                             Before

                    Torruella, Chief Judge,

                 Aldrich, Senior Circuit Judge,

                   and Boudin, Circuit Judge.

                     _____________________

   E. Peter Parker, Federal Defender Office, for appellant.
   Paula J. DeGiacomo, Assistant United States Attorney, with
whom Donald K. Stern, United States Attorney, and Despena F.
Billings, Assistant United States Attorney, were on brief, for
appellee.

                      ____________________

                         May 27, 1998
                      ____________________

         TORRUELLA, Chief Judge.  Defendant Paul E. Lowe appeals
his three-count conviction for carjacking in violation of 18 U.S.C.
2119, kidnapping in violation of 18 U.S.C.  1201, and interstate
transportation for illegal sexual activity in violation of the Mann
Act, 18 U.S.C.  2421.  He was sentenced to a total term of 432
months of imprisonment.  Lowe argues that he was deprived of his
full complement of peremptory challenges during voir dire, alleges
that the jury was exposed to prejudicial facts not in evidence, and
challenges the sufficiency and admissibility of certain evidence.  
He also contends that the district court erred in sentencing him
for the carjacking count.  We affirm.
                        I.  BACKGROUND
         On an appeal from a jury conviction, we view the facts,
consistent with record support, in the light most favorable to the
jury's verdict.  United States v. Rosen, 130 F.3d 5, 6 (1st Cir.
1997).  We find that a jury could have found the following facts.
         At approximately 5:00 a.m. on Sunday, December 10, 1995,
Lowe helped a young woman ("K.") by pushing her car as she drove it
out of a snowbank at the end of her driveway in Lowell,
Massachusetts.  Upon freeing K.'s car, he forced her to let him in,
and drove her to New Hampshire, where, in the front passenger seat,
he forced her to perform oral sex on him while holding a
screwdriver to her neck, and then raped her vaginally.  He then
drove K. back to Massachusetts, and after stealing her jewelry and
money, left K. in her car in Lowell near the Belvedere police
precinct.
         She immediately drove to the house of her boyfriend,
Steve Makris, and told him about the kidnapping, but did not
recount the rape.  Makris called the police, and when the
responding officer arrived, K. again failed to mention the rape.  
However, en route to the police station, K. stated to Makris that
she had been raped.  Upon arriving at the police station, she was
immediately taken to Saints Memorial Hospital, where emergency room
nurse Kathleen Sweetser spoke to K. for approximately 25 minutes.  
She was eventually examined by an emergency room physician, and
released.  After giving her statement to the police, she retraced
Lowe's route to New Hampshire and back for police detectives.  On
December 13, 1995, FBI agents and police officers arrested Lowe at
his girlfriend's apartment in Waltham, Massachusetts.
         The evidence presented at trial also showed that in the
hours prior to kidnapping K., Lowe had been involved in an incident
in which he purposely and repeatedly rammed his pickup truck into
the car in which his friends Nancy Goudreau and Rachel Briggar and
their boyfriends were driving.  When they confronted Lowe, he
threatened to continue hitting the car until Goudreau got into the
truck with him.  Eventually, Goudreau and her friends parked at the
Lowell police station, and there, Lowe rammed the truck right into
the car.  Lowe fled and drove to Goudreau's apartment in Lowell
where he found her sister, Priscilla Champagne.  The police arrived
at Goudreau's apartment, searched for Lowe, who was hiding in a
closet, but failed to find him.  However, they towed Lowe's truck.  
Lowe left the apartment on foot with two screwdrivers Champagne had
provided.  A short time later, Lowe encountered K. with her car
stuck in a snowbank.
         During trial, the government presented DNA evidence,
which Lowe's counsel moved to exclude.  After evidentiary hearings,
the district court issued a detailed memorandum and order denying
the motion and admitting the DNA evidence.  A jury convicted Lowe
of carjacking, kidnapping, and interstate transportation for
illegal sexual activity.  He was acquitted on an additional count
for using and carrying a firearm during a crime of violence.  The
district court sentenced Lowe to 300 months imprisonment for
carjacking, 432 months for kidnapping, and 60 months for the
interstate transportation charge, all terms to be served
concurrently with each other.  Lowe appeals.
                       II.  DISCUSSION
         A.   Peremptory Challenges

         Lowe argues that the district court's refusal to strike
for cause two prospective jurors, one of whom had been sexually
molested and the other who had been the victim of an attempted
rape, unfairly forced him to expend two peremptory challenges.  
Citing United States v. Cambara, 902 F.2d 144, 147 (1st Cir. 1990),
Lowe claims that the district court committed reversible error by
denying him the full number of peremptory challenges required by
law.  Before addressing Lowe's grounds for reversal, we must first
determine whether the district court erred in failing to excuse
these two jurors for cause.  We review a district court's ruling on
for-cause challenges to prospective jurors for clear abuse of
discretion.  See United States v. Gonzlez-Soberal, 109 F.3d 64,
69-70 (1st Cir. 1997).
         The two jurors at issue, juror number 18 and juror number
19, were among a group of ten prospective jurors who responded
during voir dire to questions concerning sexual abuse committed on
themselves, a family member or a friend.  The district court
excluded five of these jurors for cause because they stated they
could not be impartial.  The district court also excused three
additional jurors for cause even though they either claimed that
they could be impartial or professed uncertainty regarding their
impartiality.  The record reflects that the judge did not believe
these three jurors after assessing their demeanor.
         In contrast, juror number 19 stated that although she had
been sexually molested in the past, she did not think it would
interfere with her ability to be fair and impartial.  The juror
stated that the incident had occurred a long time ago, and she had
not filed a complaint or gone through a trial.  When asked, "Will
it in any way bias you against the defendant in this case?" she
responded, "no."  Lowe's counsel challenged juror number 19 for
cause, but the district court refused to strike the juror because
"[u]nlike the . . . two other women who were just in front of me
who appeared so visibly upset, she didn't.  She seemed to be able
to put it aside, she said she'd be fair and impartial."
         Juror number 18 stated that she had a friend who had been
beaten and raped about 35 years ago and that the juror had been the
victim of an attempted rape about 40 years ago.  The juror said she
did not report her own case or go through a trial.  The judge asked
whether her experiences would in any way interfere with her ability
to serve on the jury, she replied "I don't think so."  The juror
also responded "no" to a question whether she would hold any bias
against the defendant.  When Lowe's counsel moved to excuse this
juror, the judge responded, "I'm not going to excuse her based on
my evaluation of her demeanor that she could be fair and impartial.  
And I view her as credible.  It was a long time ago, 35, 40 years
ago."  Since the district court denied his motions to strike jurors
number 18 and 19 for cause, defense counsel used two peremptory
challenges to exclude these jurors.
         We find that the district court did not abuse its
discretion in denying Lowe's motions.  "There are few aspects of a
jury trial where we would be less inclined to disturb a trial
judge's exercise of discretion, absent clear abuse, than in ruling
on challenges for cause in the empaneling of a jury."  Gonzlez-
Soberal, 109 F.3d at 69-70 (quoting United States v. McCarthy, 961
F.2d 972, 976 (1st Cir. 1992)).  In the instant case, the judge
asked each juror several questions regarding their experiences with
sexual abuse to ascertain any potential bias.  We decline to
second-guess the district court's determination that jurors number
18 and 19 could be impartial at trial because "[i]t is the
fundamental task of the district court judge to make this sort of
distinction."  Cambara, 902 F.2d at 148.  The trial judge is in the
best position to assess a potential juror's credibility by
observing her demeanor, reaction to questioning, and overall
behavior on the stand.  Moreover, nothing in the record suggests
that the district court judge lacked judgment or was prejudiced
toward Lowe.  Cf. Gonzlez-Soberal, 109 F.3d at 70.
         Because the district court did not abuse its discretion
in denying the defendant's motions to exclude jurors number 18 and
19 for cause, we need not reach the question whether Lowe's use of
two of his peremptory challenges for these jurors mandates
reversal.
         B.   Jury Exposure to Prejudicial Facts
         Lowe contends that he was denied a fair trial because the
jury was presented with prejudicial facts not in evidence during
voir dire and the government's closing argument.  He argues that,
during voir dire, the jury was made aware of his pretrial escape
from the Wyatt Detention Facility when the district court asked the
entire panel of potential jurors, "[H]as anyone read or heard
anything about an escape involved in this case from a Rhode Island
jail?"
         It was well within the district court's discretion to
probe prospective jurors about the escape or any other pretrial
publicity to uncover any bias.  Lowe himself moved for individual
voir dire on the issue of pretrial publicity.  "When pretrial
publicity threatens to impede selection of an unbiased jury, the
trial judge must take extra care to ensure that the particular
jurors selected do not come to the trial with preconceived notions
about the defendant's guilt."  See United States v. Samalot Prez,
767 F.2d 1, 5 (1st Cir. 1985).  The district court, in fact,
excused two prospective jurors for cause because they said they
could not be fair and impartial due to publicity concerning the
escape.  Another juror was excused because of publicity about the
case generally.
         On the record, we see no specific proof that pretrial
publicity either tainted the trial process or prejudiced jurors.  
Only one of the deliberating jurors, juror number 28, had heard
about the case, and had done so over a year prior to the voir dire.  
The district court asked this juror, among other questions, whether
he could put aside what he had heard on the news and decide the
case on the evidence.  The juror responded, "Yes, I think so."  The
juror also said that he was sure he could be fair and impartial.  
Indeed, Lowe's counsel did not move to excuse juror number 28 for
cause.
         Lowe also contends that the government's statement in
closing argument that "K talked to Sweetser and she told her
everything" denied him the right to a fair trial.  The defendant's
counsel objected to this statement during side bar conference since
K did not testify that she had told the nurse everything.  He then
requested an instruction that the jurors' deliberations should be
controlled by their own memories of what happened.  While the
district court did not issue an immediate curative instruction,
which is a practice we regularly encourage to dispel potential
prejudice, see United States v. Rivera-Gmez, 67 F.3d 993, 999 (1st
Cir. 1995), the judge stated during her charge to the jury:
              There are certain things I want to
           emphasize that are not evidence in this
           case.  The first is, the opening
           statements and the closing arguments made
           by the lawyers are not evidence in this
           case . . . .  In the final analysis, it's
           your own recollection and your own
           interpretation of the evidence that
           controls in this case. . . .
              Don't speculate about what was
           redacted.  You will see the word "redacted"
           when it was redacted, and you won't see
           the word when the portions of the form are
           simply blank.

Transcript at 9:104-105.
         In oral argument as well as in its brief, the government
admitted to inaccurately restating trial testimony when it made the
challenged comment.  In assessing whether improper statements
during closing argument require a new trial, we examine (1) whether
the prosecutor's conduct was isolated and/or deliberate; (2)
whether the trial court gave a strong and explicit cautionary
instruction; and (3) whether it is likely that any prejudice
surviving the judge's instruction could have affected the outcome
of the case.  See United States v. Hodge-Balwing, 952 F.2d 607, 610
(1st Cir. 1991); United States v. Boldt, 929 F.2d 35 (1st Cir.
1991).  We see no deliberate attempt on the government's part to
mislead the jury with its stray comment.  During side bar, the
prosecutor acknowledged that her memory of K.'s testimony may have
been incorrect.  In addition, as previously mentioned, the
government was forthright in oral argument and in its brief in
recognizing its error.  It appears that the government made an
honest mistake rather than a deliberate one.
         We also find that the district court's curative
instruction adequately addressed Lowe's concerns regarding the
government's misstatement.  The district court emphasized to the
jurors that any statement during the closing was not evidence and
that their interpretation of the evidence presented during trial
should control their decision.  While Lowe claims that the mistaken
reference could have related to redacted parts of the hospital
records, the district court specifically admonished the jury not to
consider any redacted portions of the record.  The court properly
accounted for any possible prejudice from the government's remark.  
Under these circumstances, we find no reversible error.
         C.   Evidentiary Rulings
         Lowe opposes the admission of DNA evidence as well as
evidence of his involvement in a car crash prior to the alleged
rape.  In addition, he contests the sufficiency of evidence  used
to convict him of kidnapping.  We review a district court's
decision to admit evidence for abuse of discretion.  See United
States v. Alzanki, 54 F.3d 994, 1008 (1st Cir. 1995).  We engage in
de novo review of claims of insufficient evidence.  See United
States v. Ruiz, 105 F.3d 1492, 1494 (1st Cir. 1997).
         With respect to the admissibility of the DNA evidence, we
affirm on the grounds stated in the district court's well-written
memorandum and order on this issue.  See United States v. Lowe, 954
F. Supp. 401 (D. Mass. 1996).  We write only to note the following.  
Since Lowe admitted to having sex with K., he contends that the
prejudicial impact of the DNA evidence far outweighs its probative
value on the issue of identity.  However, as the district court
observed, the evidence "was probative not only on the issue of
identity but also on the location of the alleged rape."  Id. at
408, n.8.  Thus, the district court found that, under Fed. R. Evid.
403, "[i]ts probative value was not substantially outweighed by the
danger of unfair prejudice, confusion of the issues, or misleading
the jury."  Id.  On appeal, we afford a trial court's construction
of a Rule 403 balancing substantial discretion.  See Veranda Beach
Club Ltd. Partnership v. Western Sur. Co., 936 F.2d 1364, 1372 (1st
Cir. 1991).  Finding no abuse of discretion, we affirm the district
court's determination.
         The defendant also challenges the admission of evidence
of his involvement in a car ramming incident hours prior to his
encountering K. in her driveway.  Lowe asserts that the evidence
should have been excluded as prior bad acts evidence under Fed. R.
Evid. 404(b) and 403.  Rule 404(b) provides:
           Evidence of other crimes, wrongs, or acts
           is not admissible to prove the character
           of a person in order to show action in
           conformity therewith.  It may, however, be
           admissible for other purposes such as
           proof of motive, opportunity, intent
           preparation, plan, knowledge, identity, or
           absence of mistake or accident . . . .
 
Fed. R. Evid. 404(b).  In the instant case, the district court
admitted the car ramming evidence as probative of his desire for
sex and of his motive for committing carjacking.
         Lowe argues that the evidence did not have any relevance
to his desire for sex because he conceded having sex with K.  To
prevent the admission of bad acts evidence, a defendant's offer to
concede knowledge and/or intent issues must: (1) express a clear
and unequivocal intention to remove the issue such that, in effect
if not in form, it constitutes an offer to stipulate, and (2) the
concession must cover the necessary substantive ground to remove
the issue from the case.  See United States v. Garca, 983 F.2d
1160, 1174 (1st Cir. 1993).  Lowe's concession fails to satisfy the
second prong of this test.  Evidence that is probative of Lowe's
desire for sex is also relevant to show motive and intent to commit
kidnapping and interstate transportation for illegal sexual
activity. However, the defendant conceded to nothing more than
having consensual sex with K.  He did not concede the element of
intent required to prove kidnapping and the Mann Act offense.  
Thus, the fact that Lowe admitted to having sex with K. did not
remove the issue of intent from the case.
         The district court also properly admitted the car-ramming
evidence as probative of Lowe's motive and intent to carjack.  The
evidence showed that Lowe damaged his truck in the ramming, and the
police then towed the truck.  The jury could have inferred from the
evidence that the defendant needed to procure another vehicle to
evade the Lowell police who were searching for him.
         Lastly, despite Lowe's arguments to the contrary, the
probative value of the evidence was not substantially outweighed by
the risk of unfair prejudice under Rule 403.  In its jury
instructions on the challenged evidence, the district court warned:
           The only use you may make of Mr. Lowe's
           involvement in the car crash is to
           determine whether he had the intent to
           commit the offenses charged in the
           indictment.

           You are free to determine that Mr. Lowe's
           alleged involvement in the car crash is
           not probative of his intent to commit the
           offense with which he is charged.  You may
           not consider evidence of the car crash as
           a substitute for proof that the defendant
           committed the offenses charged, nor may
           you consider evidence of the car crash as
           proof that the defendant has a propensity
           to engage in criminal acts or has a bad
           character.

Transcript at 9:112-113.  Here, the district court minimized the
potential for prejudice by telling the jury explicitly not to draw
the forbidden inference.  Cf. United States v. Tuesta-Toro, 29 F.3d
771, 775 (1st Cir. 1994) (finding potential for prejudice minimized
by contemporaneous jury instruction which was reiterated in final
charge).  Thus, we find no error.
         Lowe's final evidentiary challenge relates to the
sufficiency of the evidence to convict him of kidnapping K.  Lowe
argues that since kidnapping is coextensive with the Mann Act,
which also requires transportation or confinement, the district
court may not convict him of kidnapping if the degree of
transportation or confinement imposed to commit the kidnapping is
no greater than that required for the Mann Act, citing Government
of Virgin Islands v. Berry, 604 F.2d 221, 227 (3d Cir. 1979);
United States v. Howard, 918 F.2d 1529, 1535-36  (11th Cir. 1990).  
In other words, Lowe contends that since the alleged transportation
and confinement of K. was merely incidental to the Mann Act
violation, these acts were insufficient to support a conviction for
kidnapping.
         The Mann Act and federal kidnapping charges are separate
and distinct offenses with different underlying congressional
purposes.  See United States v. Jones, 808 F.2d 561, 566 (7th Cir.
1986); United States v. Phillips, 640 F.2d 87, 95 (7th Cir. 1981).  
"[The] congressional intent of . . . the Mann Act was to protect
the morals of the community, while the purposes of the kidnapping
statute was to protect the liberty and life of the victim."  SeePhillips, 640 F.2d at 95, citing Sealund v. United States, 97 F.2d
742, 747 (7th Cir. 1938).  It is irrelevant that the kidnapping may
have been incidental to the Mann Act offense as long as the
government proved the elements of the kidnapping charge.
         For the kidnapping charge, the government needed to show
that Lowe knowingly and willfully seized, abducted, or confined K.,
transported her in interstate commerce, and held her for "ransom,
reward or otherwise."  See 18 U.S.C.  1201.  The term "otherwise"
can include sexual gratification.  See United States v. Sriyuth, 98
F.3d 739, 746-47 (3d Cir. 1996).  The Mann Act required the
government to prove that the defendant knowingly and willfully
transported K. in interstate commerce for purposes of prostitution
or any other illegal sexual activity.  See 18 U.S.C.  2421.  
Consent is a defense to kidnapping but not to a Mann Act charge.  
See Jones, 808 F.2d at 565.
         On the record, we find sufficient evidence of the
elements of kidnapping.  In evaluating the sufficiency of evidence
underlying a conviction, we view the evidence in the light most
favorable to the prosecution.  See Ruiz, 105 F.3d at 1494.  The
evidence shows that Lowe took and carried away K. against her will
and held her for over six hours.  During the course of the
abduction, Lowe forced K. to travel with him from Massachusetts to
New Hampshire and back.  In addition, he forced her to perform oral
sex on him as well as raping her vaginally.  The government firmly
established the elements of the kidnapping charge, and therefore,
we affirm the conviction.
         D.   Appeal of Carjacking Sentence
         Lowe appeals his 25-year sentence under 18 U.S.C.
2119(2), which enhances the 15-year sentence under  2119(1) "if
serious bodily injury (as defined in section 1365 of this title)
results" from the commission of a carjacking.  Lowe asserts that
the shorter sentence applies, arguing that K. did not suffer
serious bodily injury as defined in the statute, and that even if
the rape constitutes serious bodily injury, the rape is outside the
coverage of the statute because it did not result from the force,
violence and intimidation used to take the car.
         Section 1365(g)(3) provides that "serious bodily injury"
means bodily injury which involves:
         (A) a substantial risk of death;
         (B) extreme physical pain;  
         (C) protracted and obvious disfigurement; or  
         (D) protracted loss or impairment of the function of a
         bodily member, organ, or mental faculty . . .  

18 U.S.C.  1365(g)(3).  After reviewing the record, the district
court determined that K. suffered "protracted . . . impairment of
. . . mental facult[ies]."  During trial, nearly 10 months after
the crime, the court noted that K. was "extremely tearful through
parts of her testimony, particularly when she [was] looking in the
defendant's direction," and that she was in a "fragile" state.  The
record reflects, inter alia, that K. underwent at least 10 months
of counseling at a rape crisis center.  The district court properly
enhanced Lowe's carjacking sentence.  The record amply demonstrates
that, as a direct consequence of the rape, K. suffered serious and
continuing mental trauma, constituting a "protracted . . .
impairment of . . . mental facult[ies]" under  1365(g)(3).  Cf.
United States v. Vzquez-Rivera, 135 F.3d 172, 177-78 (1st Cir.
1998) (holding that persistent psychological trauma resulting from
rape qualified as protracted impairment of mental faculties, and
therefore, as "serious bodily injury").
         With respect to Lowe's claim that the rape was not the
result of the carjacking, we find our recent decision in Vzquez-
Rivera, 135 F.3d at 178, dispositive.  The defendant in that case,
who also raped his carjacking victim, raised a similar argument.  
However, we determined that "the choice of the word 'results' in
the statutory phrase 'if serious bodily injury . . . results'
suggests that Congress intended to cover a fairly broad range of
consequences flowing from a carjacking."  Id.  In addition, we
noted that "the legislative history characterized the provision as
imposing the enhancement when the carjacking 'involves bodily
injury,' . . . which supports the view that the injuries covered
are not limited to those resulting from the 'taking' of a vehicle,
but also include those caused by the carjacker at any point during
his or her retention of the vehicle."  Id. (internal citations
omitted).  Accordingly, we conclude that the carjacking resulted in
serious bodily injury.
                       III.  CONCLUSION
         For the foregoing reasons, the defendant's conviction is
affirmed.

</body>

</html>