HOWARD, Circuit Judge,
concurring.
I join the panel’s per curiam opinion in its entirety but write separately to share some additional thoughts about appellants’ primary sufficiency argument, see ante at 56-57, which raises what I perceive to be a recurring issue. I first summarize my analysis of the issue and then explain why I believe it warrants this separate opinion.
I.
Appellants argue that they did not violate the federal carjacking statute, 18 U.S.C. § 2119, because they did not form an intent to seriously harm or kill Fontá- *63 nez (if they formed such an intent at all) until after they and the separately tried Evans-Garcia had initiated their crime. In presenting this argument, appellants rely on statements in Holloway v. United States, 526 U.S. 1, 119 S.Ct. 966, 143 L.Ed.2d 1 (1999), suggesting that one accused of carjacking must have had the statutorily prescribed mens rea at “the moment” he demanded or took control of the driver’s vehicle, id. at 12, 119 S.Ct. 966; see also id. at 6-7, 8, 119 S.Ct. 966 (using language to similar effect); see generally ante at 8-10, 119 S.Ct. 966 (framing and then resolving this argument). In response, the government cites Holloway’s holding, that the mens rea requirement of § 2119 is met if the defendant acted with a conditional intent to seriously harm or kill the victim when he commandeered the victim’s vehicle. See id. at 12, 119 S.Ct. 966.
In so framing its response, the government does not contest the premise of appellants’ argument: that Holloway calls for an assessment of their mens rea at the inception of the carjacking. But I do not accept appellants’ premise. I do not believe that Holloway should be read to limit the jury’s focus to the commencement of the carjacking in cases like this one which, under settled circuit precedent, involve “tak[ings]” that occur over some period of time, see Ramirez-Burgos v. United States, 313 F.3d 23, 30 n. 9 (1st Cir.2002) (declining to specify “the temporal limits of a carjacking under § 2119” but “reaffirming] that the commission of a carjacking continues at least while the earjacker maintains control over the victim and her car”). I backtrack a bit to explain.
As set forth ante at 57 n. 2, the federal carjacking statute states:
Whoever, with the intent to cause death or serious bodily harm[,j takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall—
(1) be fined under this title or imprisoned not more than 15 years, or both,
(2) if serious bodily injury [defined in a different statute] results, be fined under this title or imprisoned not more than 25 years, or both, and
(3) if death results, be fined under this title, or imprisoned for any number of years up to life, or both, or sentenced to death.
18 U.S.C. § 2119. The Supreme Court has held that the statute describes three offenses with different statutory elements: (1) a carjacking (or attempted carjacking) simpliciter, § 2119(1); (2) a carjacking (or attempted carjacking) resulting in a serious bodily injury, § 2119(2); and (3) a carjacking (or attempted carjacking) resulting in a death, § 2119(3). See Jones v. United States, 526 U.S. 227, 232-52, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999). The carjackings under review in Holloway did not result in a serious bodily injury or a death, and thus were the kind described in § 2119(1). See 526 U.S. at 4, 119 S.Ct. 966. The carjacking underlying these appeals was, by contrast, the kind described in § 2119(3).
Many of the attempted carjackings and carjackings outlawed by § 2119(1) are entirely committed in the usually brief and frequently instantaneous period of time that it takes to initiate and complete the actus reus: the demand (in the case of an attempted carjacking) or the taking (in the case of a successful carjacking) of the subject vehicle. They are, in other words, crimes in which the typical actus reus is aptly thought to occur at a “moment” in time and not over a period of time. Certainly, the carjackings at issue in Holloway *64 were of this kind. See 526 U.S. at 4, 119 S.Ct. 966. Thus, it is not surprising that the Holloway majority opinion would use the phrase “the moment the defendant demanded or took control over the driver’s automobile” to describe the point in time at which the factfinder should assess the mens rea of defendants who have committed this kind of carjacking. After all, the defendant’s mens rea is to be measured when he commits the actus reus. See 18 U.S.C. § 2119 (stating that the proscribed taking or attempted taking must be committed “with” the specified intent); see also Holloway, 526 U.S. at 8, 119 S.Ct. 966 (“The statute’s mens rea component ... modifies the act of tak[ing]’ the motor vehicle.”) (alteration in original).
But I do not find anything in Holloway to suggest that the majority in that case intended the phrase also to have prescriptive significance in those carjacking cases where the defendant kidnaps the vehicle’s occupants and thus commits the actus reus not in a “moment” but rather over an extended period of time. See Ramirez-Burgos, 313 F.3d at 30 n. 9 (citing United States v. Vazquez-Rivera, 135 F.3d 172, 178 (1st Cir.1998));[4] see also United States v. Hicks, 103 F.3d 837, 843-14 & nn. 4 & 5 (9th Cir.1996) (similar); cf. Wayne R. LaFave, Criminal Law, § 8.5, at 817-18 (West 2000) (discussing the doctrine of “continuing trespass” within the law of larceny); Joshua Dressier, Understanding Criminal Law, § 32.07[B] (2d ed. Matthew Bender 1995) (similar). The only question presented in Holloway, as described by that case’s majority, was “whether a person who points a gun at a driver, having decided to pull the trigger if the driver does not comply with a demand for the car keys, possesses the intent, at that moment, to seriously harm the driver.” 526 U.S. at 6, 119 S.Ct. 966. There was no issue as to when the assailant’s intent is properly measured because only one possibility presented itself under the ease facts: the “moment” at which the vehicle was commandeered (which was the moment at which the actus reus was concluded). Nor did the case address matters pertaining to what we have called “the temporal limits” of a carjacking. See Ramirez-Burgos, 313 F.3d at 30 n. 9. Nor, finally, does the language of the carjacking statute suggest that, in circumstances such as these, the defendant’s mens rea must be measured at the moment that the taking is initiated. Cf. Vazquez-Rivera, 135 F.3d at 178 (“We begin by noting that there is no textual basis for asserting that the injury must be ‘necessary to’ or ‘intended to effectuate’ the taking of the vehicle itself.”). There is thus no reason to suppose that, in those cases where the carjacking occurs over a period of time, Holloway circumscribes the factfinder’s entitlement to assess appellants’ mens rea at any point during the commission of the actus reus.
Of course, this reading of Holloway does not render it irrelevant to a case of this sort. Holloway clarifies that we may sustain appellants’ convictions if the jury rationally could have found beyond a reasonable doubt, e.g., United States v. Marrero-Ortiz, 160 F.3d 768, 772 (1st Cir.1998), that appellants intended (even conditionally) to seriously harm or kill at the moment they first took control over the Hyundai, see 526 *65 U.S. at 12, 119 S.Ct. 966. Indeed, I think the most persuasive reason for affirming appellant Caraballo’s conviction is the “conditional intent” thesis we have identified in our opinion: The evidence that Caraballo initiated the carjacking by placing a loaded gun against Fontánez’s head permitted the jury to conclude that Cara-ballo would have shot Fontánez had Fontá-nez failed to comply with Caraballo’s demand that he turn over the car. See ante at 9,119 S.Ct. 966.
But my reading of Holloway also permits us to sustain appellants’ convictions if the jury rationally could have found that, at some point in time, they engaged in conduct constituting part of the actus reus proscribed by 18 U.S.C. § 2119 (or aided and abetted each other or others in doing so) with the specified mens rea, and if Fontánez’s death resulted from their conduct. See § 2119(3). Cf. LaFave, supra, at 817-18 (explaining that, under the continuing trespass doctrine, formation of the requisite mens rea at any time during a continuing, blameworthy trespass is sufficient to make the trespass a larceny because, at that moment, the taking and the required intent coincide); Dressier, supra, § 32.07[B][2] (same). This straightforward ground for affirming Lebrón’s conviction doe not require asking whether the jury could have found that he had a conditional intent to seriously harm or kill Fon-tánez at the moment the carj ackers demanded the car. In my view, we could have affirmed Lebrón’s conviction simply because he intentionally shot Fontánez in the head at close range during the actus reus, thus manifesting an intention to seriously harm or Mil him.
II.
Ordinarily, I would not write separately to point out a different, and less settled, route to a result with which I concur— especially where the route that the panel opinion travels is both entirely correct and based on established law. But there are situations where the potential costs of leaving matters unresolved exceed the costs that can be generated by attempting to resolve an open question. See Cass R. Sunstein, Foreword: Leaving Things Undecided, 110 Harv. L.Rev. 4, 15-20 (1995). I regard interpretation of the car-jacMng statute’s mens rea requirement as such a situation, involving the possible inadvertent foreclosure of an important issue.
Defendants charged with a carjacking involving a Mdnaping that results in serious bodily injury or death face extremely stiff penal sanctions. See 18 U.S.C. § 2119(2), (3). Unless and until we weigh in on whether Holloway has the meaning appellants have attached to it, such defendants will have a strong incentive to argue that the government has faded to prove beyond a reasonable doubt that they had a conditional intent to harm or kill — an elusive concept that is, by its very nature, difficult to prove — at the moment they first commandeered the vehicle. District courts will thus be left to make difficult decisions whether to permit an argument of this sort, grant a Fed.R.Crim.P. 29 motion on this basis, and/or instruct the jury without authoritative circuit guidance.
If appellants’ construction of Holloway is permitted to carry the day, it is not difficult to imagine a scenario where a carjacking defendant who has Mdnaped and harmed (or killed) his victim escapes punishment under 18 U.S.C. § 2119. Imagine a carjacking in which the defendant approaches a woman as she is getting into her vehicle in a crowded parMng lot, points an unloaded gun at her, tells her that he is going to commandeer her vehicle but that she will be fine if she does as she is told, drives her to some remote location, *66 and sexually assaults her. Suppose further that, at his trial for violating § 2119(2), defendant truthfully testifies that'he would have abandoned the carjacking and run off had the victim resisted, and that he only decided to assault her when the opportunity presented itself after he had taken control of her vehicle. Under appellants’ reading of Holloway, an acquittal (not subject to appellate review) would be mandated in such a situation, despite the fact that the statutory language of § 2119(2) easily supports a conviction (under what I believe to be this circuit’s definition of the statutory term “takes a motor vehicle,” see Ramirez-Bur-gos, 313 F.3d at 30 n. 9), and the fact that, as I believe, Congress would intend the statute to reach this set of facts.
It is a very small but logical step from Ramirez-Burgos to the construction of 18 U.S.C. § 2119(2) and (3) that I have described. In my view, it is a step that we should take. Doing so would help to ensure against erroneous acquittals, provide clarification of the law, and facilitate guilty pleas by earjackers who kidnap and then harm their victims and who otherwise might roll the dice on trials designed to raise reasonable doubt as to whether they had the conditional intent to harm their victims at the instant they initiated their crimes.

. Vazquez-Rivera did not explicitly state that a carjacking involving a kidnaping continues at least so long as the carj acker maintains control over the victim and her car, but it implied as much when it held that a serious bodily injury sustained by a carjacking victim during a sexual assault that followed both the initial seizure of her vehicle and her kidnaping "result[ed]” from the carjacking within the meaning of 18 U.S.C. § 2119(2). See 135 F.3d at 178.